IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **ADRIANNA JARRETT and MARY NGETHE**, individually, and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION<br><br>No.:<br>Hon. |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **[24]7.AI, INC.**, | : | |
| | : | |
| Defendant. | : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Adrianna Jarrett ("Plaintiff Jarrett") and Mary Ngethe ("Plaintiff Ngethe") (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant [24]7.AI, Inc. (hereinafter referred to as "Defendant"), and state as follows:

## PRELIMINARY STATEMENT

1.  This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

2.  According to Defendant's website, Defendant is in the call center (also referred to as "contact center") services business. Services include, "Agents [who] effortlessly provide high-quality customer experiences. Customers [who enjoy self-service capabilities and fast access to

1

resolutions. Marketing [that] capitalizes on innovative new ways to engage with customers. IT [that] achieves its digital transformation goals. And Executives that grow corporate revenue."[1]

3.      In order to provide the aforementioned services, Defendant employs hourly (non-exempt) customer service representatives with a number of job titles, including but not limited to: Customer Service Representative and Agent (hereinafter collectively referred to as "CSRs").

4.      Regardless of the specific job title all CSRs are: paid on an hourly basis; are classified as non-exempt employees; use the same timekeeping system(s); use many (if not all) the same computer programs; are subject to the same relevant timekeeping and attendance policies; and have the primary job duty of providing assistance to Defendant's clients' customers.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.  *See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), available at *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf*. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.      The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

---

[1]*See* https://www.247.ai (last visited February 6, 2023)

7.      Defendant does not compensate its CSRs, like Plaintiffs, for all work performed. Instead, Defendant requires its CSRs to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system.  This corporate policy and practice results in CSRs not being paid for all time worked.

8.      In particular, Defendant required its CSRs to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The CSRs only clocked in and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

9.      In addition to this pre-shift work, Defendant also required its CSRs to perform unpaid mid-shift work during their unpaid meal periods.  The CSRs' duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

10.     Defendant, through its managers, had actual and constructive knowledge that its CSRs were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its CSRs to complete this unpaid work.

11.     Defendant's practice of failing to compensate its CSRs for all hours worked violated the CSRs' rights under the FLSA.

12.     The individuals Plaintiffs seek to represent in this action are current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of law.

13.     Defendant knew or could have easily determined how long it takes its CSRs to complete the pre-shift start-up/log-in process, the post-shift computer log-out process, and the lunchbreak duties, could have properly compensated Plaintiffs and other CSRs for the work that they performed, but did not.

14.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly customer service representatives who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

15.     Defendant is liable for its failure to pay its CSRs for all work performed and for hours worked in excess of 40 per week.

16.     CSRs who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre- and post-shift work performed for Defendant, and for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, et seq.

18.     This Court has diversity jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiffs and Defendant reside in different states.

19.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

20.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's CSRs engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

21.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of California, is registered with the California Secretary of State and is headquartered in the state of California.

22.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) and L.R. 3-2 (c) because Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

23.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

INTRADISTRICT ASSIGNMENT

24.     A substantial part of the events or omissions which give rise to the claims occurred in Santa Clara County, and therefore this action is properly assigned to the San Jose.  N.D. Cal. Local Rule 3-2(c)-(e).

**PARTIES**

25.     Plaintiff Adrianna Jarrett is a resident of Killeen, Texas.  Plaintiff Jarrett worked for Defendant as an hourly remote CSR from approximately September 2021 until approximately January 2022. Jarrett left Defendant's employ for medical reasons.   Defendant compensated Plaintiff Jarrett through the payment of an hourly rate, most recently $18.00 per hour.  Plaintiff Jarrett signed a consent to join this collective action lawsuit, ***Exhibit B***.

26.     Plaintiff Mary Ngethe is a resident of Killeen, Texas.  Plaintiff Ngethe worked for Defendant as an hourly remote CSR from approximately October 2021 until approximately

January 2022.  Defendant compensated Plaintiff Ngethe through the payment of an hourly rate, most recently $16.00 per hour.  Plaintiff signed a consent to join this collective action lawsuit, *Exhibit C*.

27.      Additional putative Collective members were or are employed by Defendant as CSRs in Texas and potentially other states during the past three years and their consent forms will also be filed in this case.

28.      According to Defendant's website, Defendant is redefining customer experiences with conversational artificial intelligence.

> [24]7.ai is redefining how artificial intelligence, human insight, and deep vertical expertise can produce personalized, satisfying customer experiences.  Our advanced conversational AI platform predicts consumer intent to create frictionless interactions that strengthen relationships and increase brand loyalty.  Our significant contact center expertise enables us to deliver natural, consistent conversations across all digital and voice channels driving greater operational efficiencies.[2]

29.      Defendant is a California corporation with its headquarters and principal place of business located in Campbell, California.

30.      Defendant maintains a registered office in California and its registered agent can be served as follows: William Alan Bose, 2105 South Bascom Ave., Suite 195, Campbell, California, 95008.

31.      Upon information and belief, Defendant has employed hundreds of CSRs – including Plaintiffs – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

---

[2] *See* https://www.247.ai/company (last visited February 6, 2023).

32.     Throughout their employment with Defendant, Plaintiffs and other CSRs were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

33.     Defendant maintains contact centers and allows for remote work, which provides customer, sales, and claims support to Defendant's customers throughout the United States.[3]

34.     Defendant has employed hundreds of customer service representatives over the past three years as part of its contact centers and remote work to handle consumer and customer phone calls concerning various issues.

35.     CSRs are typically paid at a rate of approximately $16.00 to $18.00 per hour.

36.     Defendant compensated its CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

37.     Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each CSR, including but not limited to: offer letters, paystubs, and/or other payroll records.

38.     Defendant's CSR positions typically had schedules that require employees to work at least eight (8) hours per day (with a 30-minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek. However, in some workweeks Defendant's CSRs work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's CSRs strictly adhere to Defendant's baseline forty (40) hour schedule, the CSR schedule results in CSRs working overtime on a weekly basis.

---

[3] *See* https://www.247.ai/company/office-locations (last visited February 6, 2023).

39.     Throughout their employment with Defendant, Plaintiffs' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

40.     Once hired, Defendant provides all CSRs with training on, *inter alia*, how to carry out their day to day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's CSRs receive is substantially, if not entirely, the same and all CSRs are subject to the same disciplinary policies.

41.     Plaintiffs and other similarly situated CSRs are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. A CSRs failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendant forces its CSRs to perform the boot up and login process before clocking into Defendant's timekeeping system.

42.     All of Defendant's CSRs use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are an integral and important part of the CSRs' work and they cannot perform their jobs without them.

43.     Once training is completed and in order to perform their job, Plaintiffs and all other CSRs are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However,

Plaintiffs and all other CSRs are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

44.    The pre-shift off-the-clock time Plaintiffs and all other CSRs spend booting up and logging in to their computers directly benefits Defendant and is integral and indispensable to the CSRs' job responsibilities.

45.    Plaintiffs and other similarly situated CSRs are also trained or instructed to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they are done fielding calls.

46.    Defendant's CSRs also perform off-the-clock work when returning from lunch, for example undergoing some or all of the computer boot up process mentioned above, and when they experience technical difficulties.

47.    Despite knowing Plaintiffs and all other CSRs perform this pre-, mid- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

48.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other CSRs boot up and log into their computers each day, along with the time they log into their telephone systems.

49.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other CSRs experience down time due to technical issues.

50.    Because Defendant requires its CSRs to perform pre-, mid- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations

of the total amount of time CSRs spend working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

51.     Despite its ability to track the amount of time Plaintiffs and other CSRs spend in connection with the pre- and mid-shift boot-up and login process, post-shift shutdown process, and technical downtime, Defendant failed to pay Plaintiffs and other CSRs for the off-the-clock work they performed each shift, thus breaching its contracts with its CSRs.

52.     Plaintiffs, and similarly situated CSRs, regularly worked overtime and non-overtime hours for which they were not paid.

53.     During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

A.  **Pre-Shift Off-the-Clock Work**

54.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to perform daily off-the-clock tasks such as turn on or warm-up their computer; wait for the computer to turn on; log into Microsoft Windows using their username and password; and then start up and log into various secure computer networks and software programs/applications, such as OKTA and Citrix, in order to access information.

55.     Defendant uses its attendance/schedule adherence policies to pressure its CSRs into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

56.     Plaintiffs and all other CSRs are required to boot up and log into various computer networks, software programs, and applications, in order to access information necessary to perform their job functions.  However, Plaintiffs and all other CSRs are not actually "clocked

in" for their shifts until *after* the computer boot-up and login process is complete or nearly complete.

57.     The pre-shift boot-up and login process generally consisted of the following steps:

a.      The CSRs turned on their computer;

b.      After waiting for the computer to boot up, the CSRs were prompted to login to Windows using their username and password,

c.      The CSRs then had to connect to Defendant's network using a username and password and participate in a dual authentication process where they would log in to https://247-inc.okta.com/ to verify and receive a code on their cell phone that they must enter into the grey box located on their desktop;

d.      After the CSRs were logged into Windows and connected to Defendant's network, they opened Google Chrome;

e.      After the CSRs opened Google Chrome they would proceed to open Jabber (phone system) and log in using their name and a PIN, once opened they would hit the call button or enter a phone number to ensure the microphone and headset were functioning properly;

f.      Within Google Chrome the CSRs would open the Verizon System at *https://ilogin.verizon.com/manageaccount/VzProfileSetupController* using their first and last name which would give them access to customer accounts;

g.      The CSRs would open the website *https://verizon.webex.com/webapping/sites/verizon/dashboard/pmr/pr3636 135296* to view what products, promotions, and trade-in opportunities were available to assist with incoming calls.

h.      The CSRs changed their status to ready and began receiving calls at the moment their shift began.

58.     The above tasks take substantial time on a daily basis with said time ranging from ten (10) to twenty (20) minutes per day, and even longer when Defendant's computer networks and programs were not working properly.

59.     The CSRs frequently encountered technical problems while performing this boot-up and login process which often caused the process to take longer than 10-20 minutes.

60.     Defendant's CSRs did not actually login for their shifts until the start of their scheduled shifts; meaning that Plaintiffs and all other CSRs worked off-the-clock for at least ten (10) to twenty (20) minutes (or more) before each shift for which they were never compensated.

61.     If CSRs started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

62.     To the extent Defendant allowed its CSRs to clock in a certain amount of time before the start of their shifts (*e.g.*, up to 5 minutes) to allow for the boot-up and login process, this grace period was exceeded by the amount of time it *actually* took CSRs to complete the process. As a result, the CSRs still performed off-the-clock work for which they were not compensated.

63.     Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

64.     Defendant had express and constructive knowledge that its CSRs began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and clocked in on time.

65.     Defendant also had express and constructive knowledge that its CSRs frequently experienced technical problems with their computers or phones during the boot-up and login process.

66.     Defendant's policies and practices discouraged its CSRs from recording all time worked.

67.     The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other CSRs is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B.  Mid-Shift Off-the-Clock Work**

68.     Defendant provided its CSRs with a scheduled 30-minute unpaid meal period during each work shift.

69.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period.  29 C.F.R. § 785.19(a) states:

> **Bona fide meal periods.** Bona fide meal periods are not work time.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.  (emphasis added).

70.     According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (*Fact Sheet #64* at p. 2).

71.     However, Defendant also required Plaintiffs and all other CSRs to perform off-the-clock work during these unpaid meal periods, including returning from the 30-minute meal period approximately two (2) to seven (7) minutes early in order to have enough time to log

back in prior to resuming their shifts.  This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went uncompensated.

72.     Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

73.     Defendant had express and constructive knowledge that its CSRs took unpaid meal periods and that its CSRs performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and clocked in on time for their shifts to resume.

74.     The unpaid off-the-clock work Plaintiffs and other CSRs perform during their lunch breaks and prior to clocking back in to Defendant's timekeeping system is compensable, directly benefits Defendant an the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### C.  Post-Shift Off-the-Clock Work

75.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to change their aux code to "Home" or "Unavailable" before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls.

76.     Additionally, Defendant informed Plaintiffs and all other CSRs that they were not paid for what is referred to as "After-Call-Work" ("ACW").

77.     ACW generally includes but is not limited to any number of the following tasks:

    a.     Changing a phone number or a zip code in a customer file;

    b.     Switching a customer from primary;

    c.     If items needed to be changed or added on a customer's account;

    d.     Closing customer files;

e.      Completing calls that were dropped;

78.      The post-shift off-the-clock work or ACW generally takes anywhere from (2) two to sixty (60) minutes per day, but Defendant's CSRs are not paid for this time.

79.      The post-shift off-the-clock work Plaintiffs and other CSRs perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**D.  <u>Technical Down Time</u>**

80.      Additionally, in the course of performing their jobs, Plaintiffs and other CSRs regularly experience technical problems with their computer systems, which log them out of the time keeping systems and cause them to redo some or all of the boot up process.

81.      In these situations, the CSRs can spend up to one (1) hour or longer working with Defendant's technical team to resolve the problem(s).

82.      Defendant did not compensate Plaintiffs and other CSRs for more than one (1) hour of technical down time.

83.      Defendant is aware of the time CSRs spend experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant can pay CSRs for this time, but does not.

**E.  <u>Defendant Benefitted from the CSRs' Off-the-Clock Work</u>**

84.      At all relevant times, Defendant has required and directly benefitted from the off-the-clock work performed by Plaintiffs and all other CSRs in connection with the pre-, mid- and post-shift activities described above.

85.      At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other CSRs.

86.     At all relevant times, Defendant has been able to track the amount of time Plaintiffs and all other CSRs spend in connection with the pre-, mid- and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they performed.

87.     At all relevant times, Plaintiffs and all other CSRs have been non-exempt hourly employees, subject to the requirements of the FLSA.

88.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the CSRs in order to pressure them into performing pre-, mid- and post-shift work off-the-clock.

89.     Defendant expressly trained and instructed Plaintiffs and all other CSRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

90.     Defendant instructs CSRs to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of ten (10) to twenty (20) minutes per day, but Defendant prohibits CSRs from clocking into the timekeeping software more than five (5) minutes before the start of the scheduled shift while simultaneously requiring the CSRs to be phone/training ready the moment their shifts begin.

91.     Similarly, at the end of the shift, Defendant instructs CSRs to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls.

92.     Defendant similarly instructs its CSRs to have all work applications and systems fully loaded the moment their lunch breaks conclude so they can be prepared to field calls.

93.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the CSRs of wages owed for the pre-, mid- and post-shift activities they performed.

94.     During the weeks that CSRs work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

95.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

96.     Defendant has known or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it has acted in good faith.

97.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

98.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective").  Plaintiffs reserve the right to amend this definition if necessary.

99.     Defendant is liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and others similarly situated.

100.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

101.    Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

102.    All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

103.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

    b.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work, such as tech time; the pre- and mid-shift boot up process; and the time spent post-shift closing all applications, networks and programs and shutting down their computers; and

    c.    Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

104.    Defendant is aware, or should have been aware, that federal law requires it to pay Plaintiffs and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

105.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

106.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

107.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre, mid- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

108.    There are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

109.    Plaintiffs estimate the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

110.    All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 NATIONWIDE CLASS ALLEGATIONS

111.     Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on

behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at*
> *any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend

this definition if necessary.

112.     The members of the Rule 23 Nationwide Class are so numerous that joinder of

all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably

estimate there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class

members should be easy to identify from Defendant's computer systems and electronic payroll

and personnel records.

113.     There is a well-defined community of interests among Rule 23 Nationwide Class

members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual

questions, include, but are not limited to, the following:

> a.   Whether the pre-shift time Rule 23 Nationwide Class members spend on
> startup and login activities each session is compensable;
>
> b.   Whether the mid-shift time Rule 23 Nationwide Class members spend
> rebooting Defendant's programs, applications and networks during their unpaid
> lunch breaks before they return from their breaks is compensable;
>
> c.   Whether the post-shift time Rule 23 Nationwide Class members spend
> closing all programs, applications and networks is compensable;
>
> d.   Whether the technical down time Rule 23 Nationwide Class members spend
> troubleshooting is compensable;
>
> e.   Whether Defendant's non-payment of wages for all compensable time
> amounted to a breach of contract; and

20

      f.   Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

114.     Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

115.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

116.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

117.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

118.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S.

393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

119.      Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

120.      Plaintiffs re-allege and incorporate all previous paragraphs herein.

121.      At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

122.      At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

123.      At all times relevant to this action, Plaintiffs were an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

124.      Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

125.      Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

126.      At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

127.     At all times relevant to this action, Defendant required Plaintiffs and the proposed FLSA Collective members to perform no less than ten (10) minutes and as much as sixty (60) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

128.     The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

129.     In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

130.     Defendant's violations of the FLSA have been knowing and willful. Defendant has known or could have determined how long it takes its CSRs to perform their pre-, mid- and post-shift off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for these work activities, but did not.

131.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE BREACH OF CONTRACT

132.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

133.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

134.     Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

135.     For example, Defendant offered to compensate Plaintiff Jarrett at a minimum of $18.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff Jarrett accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

136.     Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

137.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $16.00 to $18.00 per hour within the applicable period.

138.     Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid- and post-shift work and technical downtime described herein.

139.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-

clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

140.     Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

141.     Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

142.     Defendant also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

143.     As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

144.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

145.     This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

146.     At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the

work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

147.     Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

148.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

149.     Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

150.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

151.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

152.     Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

153.     As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiffs request the following relief:

a.   An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

c.   An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count III);

d.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.   An Order designating Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.   An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.   An Order declaring Defendant's violations of the FLSA were willful;

h.   An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.   An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiffs and the members of the Rule 23 Nationwide Class to perform;

j.   An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.   An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.   An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.      An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 15, 2023                         Respectfully Submitted,

*/s/ Kevin Stoops*
Kevin Stoops(SBN 332200)
Kathryn E. Milz (pro-hac vice *admission forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Counsel for Plaintiffs, the FLSA Collective and the putative Class*