1  Kevin J, Stoops, Esq. (SBN 332200)
   kstoops@sommerspc.com
2  SOMMERS SCHWARTZ, P.C.
   One Towne Square, Suite 1700
3  Southfield, MI 48076
   Telephone: (248) 355-0300
4  Facsimile: (248) 746-4001

5  *Attorney for Plaintiffs*
   *and Proposed Class and Collective Members*

6

7                    **UNITED STATES DISTRICT COURT**

8            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

10 **ADRIANNA JARRETT and MARY**          Case No.:  23-cv-00677-EMC
   **NGETHE** individually and on behalf of all
11 others similarly situated,                **NOTICE OF UNOPPOSED MOTION AND**
                                             **MEMORANDUM OF POINTS AND**
12                        Plaintiffs,        **AUTHORITIES IN SUPPORT OF**
                                             **PRELIMINARY APPROVAL OF CLASS**
13 v.                                        **AND COLLECTIVE ACTION**
                                             **SETTLEMENT AND OTHER RELATED**
14 **[24]7.AI, INC.**,                       **RELIEF**

15                        Defendant          Honorable Edward M. Chen

16

17                                           Complaint Filed: February 15, 2023
                                             Trial Date: None Set
18

19                                           Hearing (if necessary): July 11, 2024 at 1:30 p.m.

20

21

22

23

24

25

26

27

28
                                        1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that the matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of this Court, located on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 95113 on July 11, 2024 at 1:30 p.m.. However, the Parties both feel the Court can decide the present motion without a hearing. In this motion, Plaintiffs respectfully requests entry of an order: (1) preliminarily certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (hereinafter "Rule 23") and conditionally certifying an FLSA collective for settlement purposes under 29 U.S.C. §201., *et seq.* (as defined in the Parties' Collective and Class Action Settlement Agreement and Release (hereinafter "Agreement")); (2) preliminarily approving the Parties' Settlement/Agreement and all terms therein; (3) preliminarily appointing Plaintiffs Adrianna Jarrett and Mary Ngethe as Class Representatives for the Class/Collective and Sommers Schwartz, P.C. as Class Counsel; (4) approving the form and content of the Parties' proposed Class Notice; (5) approving the appointment of Settlement Administrator; and (6) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, litigation expenses, and service awards.

Plaintiffs respectfully submit good cause exists for granting the Motion for the reasons set forth in the concurrently filed documents. Defendant's counsel has reviewed the documents being filed in support of this Motion and does not oppose it, though Defendant has reserved the right to submit a Notice of Non-Opposition, together with any additional points and authorities for the Court's consideration.

The basis for this Motion is that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Class and Collective members as a whole, and the procedures proposed by the Parties are adequate to ensure the opportunity of Class and Collective members to participate in, opt out of, or object to the Settlement.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities and other documents filed herewith, including the Settlement Agreement, the Declaration of Class Counsel (with exhibits), the [Proposed] Order granting preliminary approval as addressed above, and the other

2

NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF        Case No.: 23-cv-00677-EMC
CLASS/COLLECTIVE ACTION SETTLEMENT AND
OTHER RELATED RELIEF

pleadings and records on file in this action, and the presentations of counsel and such oral or documentary evidence as may be presented at the hearing on this unopposed Motion.

SOMMERS SCHWARTZ, P.C.

DATED:  June 7, 2024                    By: /s/ Kevin J. Stoops
Kevin J. Stoops (SBN 332200)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
kstoops@sommerspc.com

*Attorneys for Plaintiff and Proposed Collective and Class Members*

## CERTIFICATE OF SERVICE

I certify that on June 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/Kevin J Stoops*
*Kevin J. Stoops*

Kevin J, Stoops, Esq. (SBN 332200)
kstoops@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 746-4001

*Attorney for Plaintiffs*
*and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADRIANNA JARRETT and MARY NGETHE** individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>**[24]7.AI, INC.**,<br><br>                    Defendant | Case No.:  23-cv-00677-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND OTHER RELATED RELIEF**<br><br>Honorable Edward M. Chen<br><br>Complaint Filed: February 15, 2023<br>Trial Date: None Set<br><br>Hearing (if necessary): July 11, 2024 at 1:30 p.m. |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL HISTORY OF THE CASE ........................................................2

    A.  The Proceedings, Pleadings, and Parties.........................................................2

    B.  Summary of Discovery Conducted Prior to Mediation ...................................4

    C.  Reasonableness of Settlement .........................................................................5

III.  SETTLEMENT TERMS .......................................................................................7

    A.  Value of the Settlement to the Class ...............................................................7

    B.  Size of the Class/Collective and Class Definition ..........................................8

    C.  Nature of Payments, Released Claims and Released Parties ...........................8

    D.  Notice, Opt Out and Objection Periods ........................................................11

    E.  Attorneys' Fees, Litigation Expenses, Incentive Awards and Settlement Administration12

    F.  Notice Procedures .........................................................................................12

IV.   ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL.......................12

    A. Standard of Review for Class Action Settlements .........................................13

          1.    Strength of Plaintiffs' Case, Mediation Supports Approval ......................14

          2.    The Risk, Expense, Complexity, Likely Duration of Litigation................15

          3.    The Risk of Maintaining Class Action Status Through Trial ....................15

          4.    The Amount Offered In Settlement Is Fair and Reasonable......................16

          5.    The Extent of the Discovery Completed, Stage of Proceedings ................17

          6.    The Experience and Views of Counsel ......................................................17

          7.    The Presence of a Governmental Participant.............................................17

V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED............................17

    A. The Settlement Classes Satisfy the Requirements of Rule 23 .......................17

          1.    The Numerosity Requirement is Satisfied .................................................18

          2.    Common Questions of Law and Fact Exist ................................................18

          3.    Claims of the Plaintiffs Are Typical .........................................................18

          4.    Class Representatives and Class Counsel Are Adequate...........................18

    B. The Prerequisites of Rule 23(b) Are Also Satisfied ......................................19

          1.    The Predominance Requirement.................................................................19

    C. The Standard for Section 216(b) FLSA Settlement Approval is Met.............19

VI. REQUESTED APPROVAL OF ATTORNEYS' FEES, LITIGATION EXENSES, INCENTIVE AWARDS AND SETTLEMENT ADMINISTRATION FEES .................20

    A.  The Requested Attorneys' Fees and Litigation Expenses are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval ...............................20

    B.  The Named Plaintiff Incentive Awards are Reasonable ...............................21

i

C. The Administrator and Administration Fees Should Be Approved ...................................... 22

VII.    THE PROPOSED METHOD OF NOTICE IS APPROPRIATE ......................................... 22

VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ..................................... 23

IX.    CONCLUSION .................................................................................................................. 24

1

# **TABLE OF AUTHORITIES**

Page(s)

2

Cases

3

*Adams v. Inter-Con Security Sys., Inc.*,
   2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ............................................................... 23

*Alvarez v. Farmers Ins. Exch.*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .............................................................. 20

*Boyd v. Bank of Am. Corp.*,
   2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................................................ 21

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................ 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................................... 13, 22

*Cicero v. DirecTV, Inc.*,
   2010 WL 2991486 (C.D. Cal. July 27, 2010) ............................................................ 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................... 15, 16

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................................................. 21

*Cotter v. Lyft*,
   193 F.Supp.3d 1030 (N.D. Cal. June 23, 2016) .................................................. 14, 19

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................................... 20

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................................................................. 22

*General Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................. 18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................ 13, 17, 18

*In re American Med. Sys.*,
   75 F.3d 1069 (6th Cir. 1996) .................................................................................... 18

*In re Heritage Bond Litig.*,
   546 F.3d 667 (9th Cir. 2008) .................................................................................... 13

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................................... 21

*In re High-Tech Emp. Antitrust Litig.*,
   2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ............................................................ 14

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .................................................................................. 13

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .......................................................................... 17

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .................................................................................... 13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................................. 17

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin., Wage and Hour Div.*,
  679 F.2d 1350 (11th Cir. 1982) ............................................................................... 19, 20
*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)............................................................................. 16, 17
*O'Connor v. Uber Technologies, Inc.*,
  2016 WL 4398271 (N.D. Cal. Aug. 18, 2016) ............................................................. 14
*Staton v. Boeing Co.*,
  327 F.3d 938 ................................................................................................................... 21
*Van Bronkhorst v. Safeco Corp.*,
  529 F. 2d 943 (9th Cir. 1976) ........................................................................................ 16
*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ....................................................................................... 19
*Vizcaino Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002 .................................................................................. 20, 21
*Wright v. Linkus Enters., Inc.*,
  259 F.R.D. 468 (E.D. Cal. 2009) ................................................................................... 23
*Yue Zhou v. Wang's Rest.*,
  2007 WL 2298046 (N.D. Cal. Aug. 8, 2007) ............................................................... 20

Statutes

29 U.S.C. §201............................................................................................................... 2, 24
29 U.S.C. § 216(b) ............................................................................................. 8, 15, 19, 20
Section 1542 of the California Civil Code ......................................................................... 11

Rules

Fed. R. Civ. P. 23(a)(1)...................................................................................................... 18
Fed. R. Civ. P. 23(a)(2)...................................................................................................... 18
Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 22, 23
Fed. R. Civ. P. 23(e) (1) ............................................................................................... 22, 23
Federal Rule of Civil Procedure 23(e) .................................................... 13, 14, 19, 23
Federal Rules of Civil Procedure, Rule 23 ................................................................Passim
Rule 23(b) ........................................................................................................................... 19
Rule 23(b)(3)................................................................................................................. 19, 23
Rule 23(e) and Rule 23(c)................................................................................................... 23

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3        This is a FLSA and common law wage-and-hour hybrid collective/class action. Plaintiffs Adrianna

4  Jarrett and Mary Ngeth (hereinafter "Plaintiffs") have settled this litigation on behalf of approximately

5  3,981 hourly, non-exempt customer service representatives engaged by Defendant [24]7.ai, Inc.

6  (hereinafter "Defendant"). On April 18, 2023, Plaintiffs filed their First Amended Complaint ("FAC")

7  asserting the following causes of action on a collective and class basis against Defendant: (1) failure to pay

8  overtime under the Fair Labor Standards Act (FLSA) (collective action); (2) failure to pay wages – breach

9  of contract (Rule 23 nationwide class action); and (3) failure to pay wages – unjust enrichment (Rule 23

10  nationwide class action). (ECF No. 22).

11        Without waiving any arguments regarding the merits of these claims, or the suitability of the case

12  for class treatment, the Defendant has agreed to pay $1,100,000 (the Gross Settlement Amount) to resolve

13  all of the claims asserted in the FAC. Plaintiffs, without opposition from Defendant, seek court approval

14  of the Parties' Collective and Class Action Settlement Agreement and Release (hereinafter "Settlement

15  Agreement"). Filed concurrently in support of this Motion is the Settlement Agreement attached as Exhibit

16  1 (inclusive of the Class Notice, comprising Exhibit A to the Settlement Agreement) and the declaration

17  of proposed Class Counsel, Kevin Stoops, attached as Exhibit 2. A proposed order is attached as Exhibit

18  3.

19        This is a common fund settlement, with no claims process and no reversion. There will be no

20  claim forms, and those class/collective members who do not request exclusion from the Settlement will

21  automatically receive settlement checks. From the anticipated net settlement amount of $643,370, the

22  Settlement Agreement allocates 74% to the FLSA Settlement Payment bucket and 26% to the Rule 23

23  Settlement Payment bucket. Individuals who have not previously opt-ed into this litigation and who

24  negotiate their FLSA Settlement Payment will opt-in to the FLSA collective. The Collective/Class is

25  comprised of current and former hourly-paid individuals holding the position of Customer Service

26  Representative (hereinafter "CSR") between February 15, 2020 and June 15, 2024. (Exh. 1, at ¶¶ 2(e),

27  2(i)).

28

For settlement purposes only, Plaintiffs request entry of an order: (1) preliminarily certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (hereinafter, "Rule 23") and conditionally certifying an FLSA collective for settlement purposes under 29 U.S.C. §201., *et seq.* (as defined in the Parties' Settlement Agreement); (2) preliminarily approving the Parties' Settlement and all terms therein; (3) preliminarily appointing Plaintiffs Adrianna Jarrett and Mary Ngethe as Class Representatives for the Class/Collective and Sommers Schwartz, P.C. as Class Counsel; (4) approving the form and content of the Parties' proposed Class Notice; (5) approving the appointment of Settlement Administrator; and (6) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, litigation expenses, and incentive awards.

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings, and Parties

On February 15, 2023 Plaintiffs filed this lawsuit, asserting the following claims:

➤ Count I: Failure to Pay Overtime – Collective Action under the Fair Labor Standards Act ("FLSA")

➤ Count II: Failure to Pay Wages – Rule 23 Nationwide Class Action for Breach of Contract

➤ Count III: Failure to Pay Wages – Rule 23 Nationwide Class Action for Unjust Enrichment (pled in the alternative to Count II) (ECF No. 1).

In early March 2023 counsel for the Parties exchanged multiple communications and held meet and confer conferences concerning Defendant's claim that Plaintiffs should amend their Complaint to remove alleged proprietary business information contained in the Complaint. (Exh. 2, Stoops Decl. at ¶ 11). To address Defendant's concerns, Plaintiffs' filed their First Amended Complaint ("FAC") on April 18, 2023. (ECF No. 22). The FCA contains the same claims stated in Plaintiffs' original Complaint. (*Id.* at ¶ 12).

On April 18, 2022 Plaintiffs' filed their pre-discovery Motion for Conditional Certification and Issuance of Court Authorized Notice to FLSA Collective. (ECF No. 21). Thereafter, the Parties held multiple meet and confer conferences to discuss whether Defendant would stipulation to conditional certification and issuance of notice to the FLSA Collective. (Exh. 2, Stoops Decl. at ¶ 14).

On May 2, 2023, the Defendant filed an answer, which listed 24 affirmative defenses. (ECF No. 28).

On June 28, 2023 the Parties submitted a Joint Stipulation to Conditional Certification of FLSA Collective Action Notice. (ECF No. 40). The Court rejected certain aspects of the Parties proposed Notice (ECF No. 41), requiring the Parties to file an Amended Joint Stipulation to Conditional Certification of FLSA Collective Action Notice, along with a modified proposed Notice, on July 5, 2023. (ECF No. 42). The Court approved the modified Notice on July 7, 2023. (ECF No. 44). On August 4, 2023 the FLSA Notice was issued to 3,981 putative FLSA collective members by professional services provider Atticus Administration, LLC. (Exh. 2, Stoops Decl. at ¶ 19).

During the Notice period, counsel for the Parties held multiple meet and confer conferences to discuss how to proceed with the litigation following the end of the notice period. These conferences included conversations about the scope of representative discovery, the necessity of issuing subpoenas to multiple staffing companies to obtain time and pay records for members of the opt-in Collective, and the potential of exploring resolution for the FLSA opt-in Collective and/or the entire putative Class. (*Id.* at ¶ 20). Ultimately, the Parties decided to submit the case to mediation following the conclusion of the FLSA Notice period. (*Id.* at ¶ 21).

On August 22, 2023 counsel for Defendant notified Plaintiffs' Counsel that 83 individuals had been inadvertently omitted from the collective list provided to Atticus Administration, LLC. (*Id.* at ¶ 22). August 29, 2023 the Parties submitted a Joint Stipulation seeking approval to issue notice to the 83 omitted individuals. (ECF No. 65). The Court granted that request on August 31, 2023. (ECF No. 66). Atticus Administration, LLC, issued notice to the 83 omitted individuals on September 11, 2023. (Exh. 2, Stoops Decl. at ¶ 25). At the conclusion of the original and supplemental opt-in deadlines a total of 848 collective members had affirmatively opted into the case as FLSA party plaintiffs (out of the 3,981 who were issued notice). (*Id.* at ¶ 26).

In an effort to obtain the fact discovery concerning the 848 opt-ins, including information necessary to analyze their potential damages, Defendant issued subpoenas to 14 different staffing companies on September 6, 2023. (*Id.* at ¶ 27). The majority of the staffing companies responded to

the subpoenas by way of producing time and pay records for the opt-ins that worked for Defendant through their agency. One of the staffing companies refused to comply with the subpoena and, instead, lodged objections. (*Id.* at ¶ 28). The Parties agreed to utilize the pay and time records received by way of the subpoenas in an effort to determine the amount of potential damages owed to the opt-in collective members and putative Class. (*Id.* at ¶ 29).

On April 16, 2024, the Parties attended a private mediation with nationally respected wage and hour mediator Michael Dickstein of San Francisco. (*Id.* at ¶ 30). After a full day, contentious mediation, the Parties were able to reach an agreement. A Memorandum of Understanding was executed the same day, and, over the next few weeks, the Parties negotiated and finalized the long-form settlement agreement, which is now before the Court for preliminary approval. (*Id.* at ¶ 31). The Parties filed a Notice of Settlement on April 17, 2024. (ECF No. 83).

**B.      Summary of Discovery Conducted Prior to Mediation**

Prior to attending mediation, Class Counsel reviewed and analyzed the following materials, that consisted of hundreds of pages of documents in addition to substantial electronic data:

   a.      Information pertaining to the number of Class Members engaged by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of engagement; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

   b.      Data modeling and related statistics identifying off-the-clock work by the Class Members;

   c.      Voluminous time and pay records;

   d.      Time-keeping policies;

   e.      Training policies and materials;

   f.      Employee handbook;

   g.      Developing a survey that was disseminated to the opt-in collective members and analyzing the survey results/data; and

   h.      Documents provided to counsel by the Plaintiffs. (Exh. 2, Stoops Decl. at ¶ 36).

## C.    Reasonableness of Settlement

Defendant asserted numerous legal and factual defenses to Plaintiffs' claims and class certification efforts including, among others, that:

a.  The time Plaintiffs and the Class Members sought compensation for was not compensable under the Portal-to-Portal Act.

b.  The time Plaintiffs and the Class Members sought compensation for was not compensable because it was *de minimis*.

c.  Defendant will seek to compel arbitration with respect to at least one-third of the Collective/Class Members who are subject to individual arbitration agreements and class waivers.

d.  Defendant did not employ the Class Members and any liability for alleged wage and hour claims must be borne by the 14 staffing companies.

e.  Defendant maintains written employment policies, which prohibit all off-the-clock work.

f.  Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

g.  Defendant will tender Class Members to testify that they did not work off-the-clock and/or that the alleged off-the-clock work is exaggerated.

h.  The putative Class Members engaged in personal activities at the beginning of their shifts.

i.  Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks he describes.

j.  The putative Class Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

k.  Plaintiffs and the Class Members were paid for all worked performed.

l.  The pre- and post-shift log-in and log-out activities are not compensable because the said activities were not integral and indispensable to the Class Members' principal work activities.

m.  The putative Class Members will not satisfy the commonality and predominance elements to obtain Rule 23 class certification.

n.  Plaintiffs and the Class Members will not be able to establish that Defendant's alleged violations were willful.

o.  Plaintiff and the Class Members will not be able to recover liquidated damages. (Exh. 2, Stoops Decl. at ¶ 43).

The existence of Defendant's factual and legal arguments weighed on the parties' decision to

resolve the case. While Class Counsel understandably takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiffs' wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. Specifically, settling this case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (individual class member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by Rule 23 certification motion practice on Plaintiffs' common law claims, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 44).

To evaluate and negotiate settlement and take part in mediation, Class Counsel retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP. (*Id.* at ¶ 45).

In their complaint, Plaintiffs estimated a maximum of fourteen (14) to fifteen (27) minutes of off-the-clock work per day associated with the pre-, mid- and post-shift log-in and log-out activities. However, Defendant insisted that these estimations are grossly inflated, that most of the Class Members do not perform substantial, if any, off-the-clock work, and that the alleged time is not compensable under the Portal-to-Portal Act and the *de minimis* doctrine. (*Id.* at ¶ 48). Affording due consideration to the facts of the case and Defendant's evidence, Class Counsel determined that reasonable estimation of the actual maximum damages equals six (6) to eight (8) minutes per day. (*Id.* at ¶ 49).

Utilizing the six (6) to eight (8) minute per day estimation – and extrapolating the timekeeping and pay record mediation data to extend from February 2020 (three years prior to Complaint filing) through April 16, 2024 (date of mediation) – Class Counsel and the expert economist developed a time consuming and complicated damage analysis of all claims and calculated the Defendant's maximum exposure for all claims (including overtime wages, gap time damages for straight time wages, and liquidated damages on all unpaid overtime wages) fell in the range of $1,409,303 to $1,891,147. (*Id.*

MEMORANDUM FOR PRELIMINARY APPROVAL                    Case No. 23-cv-00677-EMC

at ¶ 50). Based on the damage analysis conducted by Class Counsel and their damages expert, and in light of the factual and legal defenses identified above, the $1,100,000 settlement equates to 58.17% to 78.05% of Defendant's $1,409,303 to $1,891,147 maximum damage exposure. (*Id.* at ¶ 51).

## III.    SETTLEMENT TERMS

The Settlement Agreement provides as follows:

### A.    Value of the Settlement to the Class

The settlement provides for a non-reversionary Gross Settlement Amount of $1,100,000. (Exh.1, at ¶2(r)). The Net Settlement Amount means the Gross Settlement Amount minus Class Counsel's attorneys' fees and litigation expenses, the settlement administration costs, and Plaintiffs' incentive awards. (*Id.* at ¶ 2(u)). The anticipated Net Settlement Amount is approximately $643,370, based on the following deductions from the $1,100,000 Gross Settlement Amount: $5,000 to each of the Named Plaintiffs for incentive awards; $40,000 for settlement administration fees; $366,630 for attorneys' fees (33.33% of the Gross Settlement Amount); and up to $40,000 in litigation expenses. (*Id.* at ¶ 18(a-d)).

The Net Settlement Amount shall be split into two buckets: 1) the "FLSA Settlement Payment" bucket, which shall consist of 74% of the Net Settlement Amount; and 2) the "Rule 23 Settlement Payment" bucket, which shall consist of 24% of the Net Settlement Amount. (*Id.* at ¶ 18(e)). After splitting the into the "FLSA Settlement Payment" bucket and the "Rule 23 Settlement Payment" bucket, Individual FLSA and Rule 23 Settlement Payments will be calculated from the amounts in each bucket as follows:

1.    The Settlement Administrator will use the number of Workweek(s) worked by Settlement Class Members during the Class Period, which will be determined based on the information in the Class List Defendant provides to the Settlement Administrator;

2.    Each of the Settlement Class Members is eligible to receive a *pro rata* share of the FLSA Settlement Payment bucket and the Rule 23 Settlement Payment bucket based on their share of the total number of Workweeks during the Class Period.

3.    The value of a single Workweek during the Class Period shall be determined by dividing the FLSA Settlement Payment bucket and the Rule 23 Settlement Payment bucket by the total number of Workweeks during the Class Period worked by all Settlement Class Members. Each Settlement Class Member shall be allocated a gross payment equal to their individual Workweeks during the Class Period multiplied by the value of a single Workweek during the Class Period.

4.    The individual FLSA Settlement Payments and Rule 23 Settlement Payments (collectively, Individual Settlement Payments) shall be allocated as follows: (i) fifty percent (50%) of each Settlement Class Member's Individual Settlement Payments will be allocated to settlement of wage claims (the "Wage Portions"); and (ii) the remaining fifty percent (50%) will be allocated to liquidated damages, penalties and interest. The Settlement Administrator will withhold the Settlement Class Members' share of taxes and withholdings with respect to the wage portion of the Individual Settlement Payments, and issue checks to Settlement Class Members for their net of the FLSA Settlement Payment and Rule 23 Settlement Payment, provided that no Settlement Class Member shall receive an Individual Settlement Payment of less than Twenty Dollars and Zero Cents ($20.00). The wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The portion allocated to liquidated damages, penalties and interest (i.e., Non-Wage Portions) are not subject to wage withholdings and will be reported in IRS 1099 Forms (if required). (*Id*. at ¶ 18(e), 19(a)).

**B.    Size of the Class/Collective and Class Definition**

Under the Settlement Agreement, "Class Members" are defined as:

(i) all non-exempt customer service representatives ("CSRs") engaged by Defendant during the Class Period,[1] as follows: (i) the 848 non-exempt CSRs, including Plaintiffs, who joined this Action by submitting opt-in consent forms (available at Dkt. Nos. 1-3; 1-4; 50-1; 51-1' 52-1; 53-1; 54-1; 55-1; 56-1; 57-1; 58-1; 59-1; 60-1; 61-1; 62-1; 63-1; 64-1; 67-1; 68-1; 70-1; 71-1; 72-1; 73-1; 74-1; 75-1; 76-1) following Court approval of pre-discovery conditional certification in this Action pursuant to 29 U.S.C. § 216(b) ("Collective Opt-in(s)"); and (ii) all non-exempt CSRs who were engaged by Defendant during the Class Period (estimated at 3,133 individuals by the Parties) but who did not submit opt-in consent forms during the pre-discovery conditional certification period. ("Rule 23 Member(s)"). (*Id*. at ¶ 2(e)).

Further, "Settlement Class Members" are defined as:

(i) the Collective Opt-Ins (*i.e*., the 848 non-exempt CSRs, including Plaintiffs, who joined this Action by submitting opt-in consent forms (available at Dkt. Nos. 1-3; 1-4; 50-1; 51-1' 52-1; 53-1; 54-1; 55-1; 56-1; 57-1; 58-1; 59-1; 60-1; 61-1; 62-1; 63-1; 64-1; 67-1; 68-1; 70-1; 71-1; 72-1; 73-1; 74-1; 75-1; 76-1) following Court approval of pre-discovery conditional certification in this Action pursuant to 29 U.S.C. § 216(b)); and (ii) the 3,133 non-exempt CSRs who were engaged by Defendant during the Class Period who do not timely file Opt Out Requests and consent to the terms of the Settlement by negotiating checks in the gross amount of their Individual Settlement Payments. (*Id*. at ¶ 2(ii)).

**C.    Nature of Payments, Released Claims and Released Parties**

This is a common fund settlement with no reversion, and every Class Member will be sent

---

[1] Class Period is defined in the Settlement Agreement as: "shall be February 15, 2020 through the date the Court grants Preliminary Approval of this Agreement or 60 calendar days from April 16, 2024 (whichever date is earlier). (Id. at ¶ 2(i)).

Individual Settlement Payments. (*Id.* at ¶ 23). Specifically, each Class Member will receive an Individual Settlement Payment equaling their pro-rata share of the FLSA Settlement Payment bucket and an Individual Settlement Payment equaling their pro-rata share of the Rule 23 Settlement Payment bucket. (*Id.* at ¶ 18(e)(ii)). Individual Settlement Payment Checks will be valid for 180 calendar days. (*Id.* at ¶ 25(f)). Funds from checks that are not negotiated within the 180 day period will be transmitted to *cy pres* designee: Bay Area Legal Aid (or such other *cy pres* designee as ordered by the Court). (*Id.*).

The Settlement Agreement defines the following releases:

"Settled FLSA Claims" means and any and claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the Class Period and that are based on or are reasonably related to claims for unpaid wages (including but not limited to claims for regular wage, overtime and gap time) under the FLSA. Settled FLSA claims exclude claims that are: (i) not based on or reasonably related to the claims asserted in the Action; and/or (ii) expressly non-waivable under the law, including claims for retaliation, wrongful termination, unemployment, disability, worker's compensation; and/or (iii) outside of the Class Period. (*Id.* at ¶ 2(gg)).

"Settled Rule 23 Class Claims" means and any and claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the Class Period and that are based on or are reasonably related to claims under applicable state and common law wage theories (including but not limited to claims for breach of contract and/or unjust enrichment). Settled Rule 23 Class claims exclude claims that are: (i) not based on or reasonably related to the claims asserted in the Action; and/or (ii) expressly non-waivable under the law, including claims for retaliation, wrongful termination, unemployment, disability, worker's compensation; and/or (iii) outside of the Class Period. (*Id.* at ¶ 2(hh)).

As of the Effective Date[2] and full funding of the Gross Settlement Amount, all Settlement Class Members shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all Settled FLSA Claims and Settled Rule 23 Class Claims during

---

[2] "Effective Date" is defined in the Settlement Agreement as: "means 1) if there are no objections to the Settlement, the first business day following the last of the following occurrences: (i) the date the Court enters the Final Approval Order and Judgment; (ii) if there is an objection, but no appeal is taken from the Final Approval Order and Judgment, thirty-one (31) calendar days after the Court enters the Final Approval Order and Judgment; or (iii) if an appeal is taken from the Final Approval Order and Judgment, then the date of final resolution of that appeal (including any requests for rehearing and/or petitions for certiorari), resulting in final and complete judicial approval of this Agreement in its entirety, with no further challenge to the Agreement being possible." (Id. at ¶ 2(m)).

the Class Period against any and all Released Parties. (*Id.* at ¶ 11). The Released Parties shall mean Defendant [24]7.ai, Inc. and each of its parent companies, subsidiaries, affiliates, assigns, predecessors, successors, owners (whether managers, partners, shareholders), directors, employees (current and former), board members and agents. (*Id.* at ¶ 2(cc)).

The checks issued to Class Members for their Individual Settlement Payments will include the following release language:

Release Language on FLSA Claim Settlement Checks. The Settlement Administrator shall include the following release language on the back of each FLSA Claim settlement check, as appropriate:

a. For Collective Opt-Ins: "This check is your FLSA settlement payment in connection with the court-approved collective and class action Settlement in the case entitled *Jarrett et al v. [24]7.ai, Inc.*, Case No. 23-cv-00677-EMC, pending in the United States District Court, Northern District of California (the "Action"). You previously submitted a consent to join form and affirmatively joined the action as a FLSA opt-in. By signing or cashing your check, you acknowledge that you are participating in the Settlement and that you are releasing the Settled FLSA Claims against the Released Parties (as those terms are defined in the Class Notice)." (*Id.* at ¶ 15(a)).

b. For Rule 23 Members: "This check is your FLSA settlement payment in connection with the court-approved collective and class action Settlement in the case entitled *Jarrett et al v. [24]7.ai, Inc.*, Case No. 23-cv-00677-EMC, pending in the United States District Court, Northern District of California, (the "Action"). By signing or cashing this check, you are consenting to join the Action and are fully, finally, and forever releasing, settling, compromising, relinquishing, and discharging the Released Parties from any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the period of February 15, 2020 through the date the Court grants Preliminary Approval of the Settlement or 60 calendar days from April 16, 2024 (whichever date is earlier), and that are based on or are reasonably related to claims for unpaid wages (including but not limited to claims for regular wages, overtime, and gap time) under the FLSA. By signing or cashing your check, you acknowledge that you have read the Class Notice, that you consent to join the Action as a FLSA opt-in and participate in the Settlement, and that you are releasing the Settled FLSA Claims against the Released Parties (as those terms are defined in the Class Notice)." (*Id.* at ¶ 15(b)).

Release Language on Rule 23 Settlement Checks. The Settlement Administrator shall include the following release language on the back of each Rule 23 Settlement check:

"This check is your Rule 23 settlement payment in connection with the court-approved collective and class action Settlement in the case entitled *Jarrett et al v. [24]7.ai, Inc.*,

1
2
3
4
5
6
7
8

Case No. 23-cv-00677-EMC, pending in the United States District Court, Northern District of California, (the "Action"). By signing or cashing this check, you are fully, finally, and forever releasing, settling, compromising, relinquishing, and discharging the Released Parties from any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the period of February 15, 2020 through the date the Court grants Preliminary Approval of the Settlement or 60 calendar days from April 16, 2024 (whichever date is earlier), and that are based on or are reasonably related to claims under applicable state and common law wage theories (including but not limited to claims for breach of contract and/or unjust enrichment. By signing or cashing your check, you acknowledge that you have read the Class Notice, that you consent to participate in the Settlement, and that you are releasing the Settled Rule 23 Class Claims against the Released Parties (as those terms are defined in the Class Notice)." (*Id*. at ¶ 15(c)).

9
10

The Named Plaintiffs will provide a general release, including a waiver of the provisions of Section 1542 of the California Civil Code. (*Id*. at ¶ 12).

11

### D.  Notice, Opt Out and Objection Periods

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Class Members shall have forty five (45) calendar days from the mailing of the Class Notice to submit an Opt Out Request or to file an Objection to the Settlement. (*Id*. at ¶ 2(v-x)). Any Class Members who have their Class Notice(s) remailed will have an additional fourteen (14) calendar days beyond the Objection Period to file an Opt Out Request or Objection. (*Id*. at ¶ 2(w)). Each Objection (i.e., an objection to the Settlement that a Rule 23 Member submits in writing to the Settlement Administrator) must: (i) contain the name and case number of the Action; (ii) contain the full name, address, and telephone number of the objecting Rule 23 Member; (iii) be signed by the Rule 23 Member; (iv) contain a written statement of all grounds for the Objection accompanied by any legal support for such Objection; (v) contain copies of any papers, briefs, or other documents upon which the Objection is based; and (vi) be emailed, postmarked or fax stamped on or before the Objection Period and returned to the Settlement Administrator at the email address, mailing address and/or fax number specified in the Class Notice. (*Id*. at ¶ 2(v)). Each Opt Out Request (i.e., a request by a Rule 23 Member to be excluded from the Settlement) must: (i) contain the name and case number of the Action; (ii) contain the full name, address, and telephone number of the Rule 23 Member requesting exclusion from the Settlement; (iii) be signed by the Rule 23 Member; (iv) contain a clear written statement indicating that the Rule 23 Member seeks exclusion from the Settlement; and (v) be emailed,

28

1   postmarked or fax stamped on or before the Objection Period and returned to the Settlement

2   Administrator at the email address, mailing address or fax number specified in the Class Notice.

3   **E.   Attorneys' Fees, Litigation Expenses, Service Awards and Settlement Administration**

4   From the Gross Settlement Amount, $366,630 (33.33% of the Gross Settlement Amount) shall be

5   allocated to Class Counsel for their attorneys' fees. (*Id*. at ¶ 18(a)). Additionally, Class Counsel seeks

6   reimbursement of litigation expenses which are estimated to be no more than $40,000 by the conclusion

7   of the Settlement. (*Id*. at ¶ 18(b)). The current total for Class Counsel's litigation expenses is

8   $32,381.22. (Exh. 2, Stoops Decl. at ¶ 66).

9   For their assistance in obtaining relief for the Class, the Named Plaintiffs (Adrianna Jarrett and

10   Mary Ngethe) seek incentive awards in the amount of $5,000 each. (Exh. 1, at ¶ 18(d)). Finally, the

11   Settlement Agreement allocates up to $40,000 for settlement administration fees (*Id*. at ¶ 18(c)), but the

12   bid accepted for the administration of the settlement was $36,744. (Exh. 2, Stoops Decl. at ¶ 65). The

13   parties have selected Atticus Administration LLC as the Settlement Administrator. (*Id*. at ¶ 64).

14   **F.   Notice Procedures**

15   Within fourteen (14) calendar days after the date that the Court grants preliminary approval of

16   the Settlement Agreement, Defendant shall provide to the Administrator a list of all Class Members

17   ("Class List") and all information necessary to locate Class Members, process payments, and process

18   claims for payments, including, but not limited to, Class Member workweeks or dates of engagement,

19   last known addresses, last known email addresses, social security numbers, and any other information

20   required to effectuate the Agreement. (Exh. 1, at ¶ 2(g), 22(a)). Within fourteen (14) days of receiving

21   the Class List, Administrator shall mail and distribute to all Class Members a notice of this settlement

22   informing them of the basic information regarding its terms, how to submit objections, how to exclude

23   themselves from this proposed settlement, their estimated Individual Settlement Payments, how to

24   dispute the allocated number of workweeks, and the date for a final approval hearing (the "Class

25   Notice," in a form substantially similar to that attached the Agreement as Exhibit A). (*Id*. at ¶22 (c)).

26   **IV.   ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL**

27

28

MEMORANDUM FOR PRELIMINARY APPROVAL       Case No. 23-cv-00677-EMC

A.    **Standard of Review for Class Action Settlements**

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008). This inquiry requires that the Court balance factors such as "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Prior to formal class certification, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill.*, 361 F.3d at 575. The Ninth Circuit has therefore explained that "where ... the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.' " *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotation marks omitted).

For approval of class action settlements, district courts have interpreted Rule 23(e) to require a two-step process: "the [c]ourt first determines whether class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (internal quotation omitted). As a general matter, "there is relatively scant appellate authority regarding the standard that a district court must apply in reviewing a settlement at the preliminary approval stage." *Id.* Although the Ninth Circuit has not specified what standard should apply at the preliminary stage, "district courts often state or imply that scrutiny should be more lax." *Cotter v. Lyft*, 193 F.Supp.3d 1030, 1035-36 (N.D. Cal. June 23, 2016). Recently, however, courts have begun to question this "lax review," noting that such a review "makes little practical sense, from anyone's standpoint." *Id.* at 1036. Rather, "by scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified, the court allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process." *Id.* at 1037; *see also O'Connor v. Uber Technologies, Inc.*, 2016 WL 4398271, at *8 (N.D. Cal. Aug. 18, 2016).

### 1.      Strength of Plaintiffs' Case, Mediation Supports Approval

The Settlement here was reached through arm's-length bargaining between counsel with the assistance of nationally respected wage and hour mediator Michael Dickstein. Class Counsel was confident in the merits of claims asserted, and likewise Defendant maintained that it would be able to defeat a class certification motion and/or class claims on the merits, including an anticipated motion for summary judgment. The parties preferred this Settlement to facing protracted litigation and incurring costs and fees before this honorable Court or the Ninth Circuit.

Prior to the mediation process, both parties researched their claims and defenses in order to appropriately evaluate the strengths and weaknesses of their respective cases, and did so in view of the comprehensive class-wide (albeit informal) discovery addressed above. (Exh. 2, Stoops Decl. at ¶¶ 36-55). Prior to and during the mediation, Defendant also voluntarily provided class data and information

- 14 -

1    which permitted an objective assessment of Defendant's potential liability exposure. Ultimately, both

2    parties carefully weighed the risks and benefits of resolving the case in comparison to proceeding with the

3    motion for class certification and summary judgment, and, potentially, before the Ninth Circuit. The

4    parties concluded that the settlement terms were acceptable and the benefits of settling outweighed the

5    risks of further litigation.

6              **2.        The Risk, Expense, Complexity, Likely Duration of Litigation**

7              The parties have disputed the strength of Plaintiff's claims and the substantial risk of not attaining

8    class certification under Rule 23, or certification of the Collective under 29 U.S.C. §216(b), or an adverse

9    ruling on a summary judgment motion. Defendant maintains that even if the Plaintiff and Class Members

10   prevail on their claims, the damages owed to the Class Members are nominal. Class Counsel submits it

11   has properly assessed the risks of continued litigation, including at trial and on appeal, in concluding the

12   Settlement is fair. (Exh. 2, Stoops Decl. at ¶¶ 42-55).

13             Both sides advocated strongly for their respective clients' chances for success on the primary

14   claim that Defendant failed to properly compensate employees for all hours worked. Proof of liability

15   and damages here would have been challenging. This is particularly true on the off-the-clock work

16   claim where no records exist to specifically document the duration of off-the-clock work from one

17   employee to another. The Settlement now saves the parties and the Court from years of litigation,

18   including Rule 23 class certification, a FLSA collective decertification motion, dispositive motions,

19   trial, and appeal. It is very likely that this litigation would extend for another two years and cost the

20   parties hundreds of thousands of dollars or more in attorneys' fees and expenses. (*Id.*). For these same

21   reasons, the law strongly favors settlements, particularly where complex class action litigation is

22   concerned.  *See, Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

23             In light of Defendant's advocated defenses, the difficulties in proving damages, the number of

24   class members, uncertainty of certifying claims, and the manageability issues presented, the Settlement is

25   within the range of reasonableness for approval.

26             **3.        The Risk of Maintaining Class Action Status Through Trial**

27             The above discussion applies to the risks of maintaining this action through trial, as Plaintiffs

28

1    would have faced contested motion practice and continued expenses and delay to get to trial, would have

2    faced manageability challenges at trial, and would have likely faced the additional time and delay required

3    in further proceeding before the Ninth Circuit. The uncertainty on the legal issues at the core of the parties'

4    claims and defenses further underscores the reasonableness of the proposed Settlement in the face of

5    palpable risk.

6        The parties strongly contested the relative risks in this case, and adjusted them based on several

7    factors, including recent case law, likelihood of success at certification, likelihood of success on the merits,

8    and varying assumptions of alleged non-compliance with applicable governing law. Given the constantly

9    shifting legal landscape of class action litigation, there is also a significant chance that any class

10   certification, collective and/or representative order or judgment in favor Plaintiffs could be overturned on

11   appeal. All of these were very substantial risks, any of which could have resulted in the class/collective

12   members receiving nothing if the claims were further litigated.

13                    **4.        The Amount Offered In Settlement Is Fair and Reasonable**

14       Based upon the evidence obtained and the figures above, Defendant's realistic maximum

15   damage exposure in this case fell in a range of $1,409,303 to $1,891,147. (Exh. 2, Stoops Decl. at ¶

16   50). Accordingly, the $1,100,000 Gross Settlement Amount provides the Class Members 58.17% to

17   78.05% of their maximum damages. (*Id.* at ¶ 51).

18       Courts in the Ninth Circuit have observed that: "simply because a settlement may amount to only

19   a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the

20   very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l*

21   *Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law

22   that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential

23   recovery"). The Settlement here is significantly more than a "fraction" and provides a recovery

24   commensurate with the associated risk factors involved in the case.

25       Settlement in class actions is preferable where substantial resources can be conserved by avoiding

26   the time, cost, and rigors of formal litigation. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268,

27   1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976).  Here, the

28

Settlement is fair and reasonable based on the strength of Plaintiffs' claims and the risks and costs of further litigation. The Settlement compares favorably to the uncertainties of further litigation. *Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

### 5.    The Extent of the Discovery Completed, Stage of Proceedings

This factor supports approval as the parties have completed substantial discovery, which has allowed them to properly evaluate the strengths and weaknesses of their positions on the various legal issues. As such, significant investment has been made by both parties who stand to lose everything based on the uncertainty of the outstanding legal issues in this case.

### 6.    The Experience and Views of Counsel

Another factor considered in determining the fairness of a settlement is the experience and views of counsel. *Hanlon*, 150 F.3d at 1026. Courts do not second guess the parties or substitute their judgment for that of the proponents of the settlement, and many courts give considerable weight to the opinion of experienced counsel supporting the settlement. *See, e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Where there is no evidence of fraud or collusion, courts presume they were conducted in good faith. *See Newberg on Class Action*, 3d Ed. § 11.51.

Class Counsel has practiced law for many years, has focused its practice on wage and hour class actions, and has been appointed class counsel or co-class counsel in scores of class actions, obtaining substantial recoveries for hundreds of thousands of employees. Similarly, Defendant is represented by Spencer Fane LLP, a well-known employment defense firm, and defense counsel are well-versed in litigating wage and hour class actions. The parties and counsel believe the Settlement is fair and appropriate given all factors involved.

### 7.    The Presence of a Governmental Participant

This factor is not applicable to this case.

## V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

### A.    The Settlement Classes Satisfy the Requirements of Rule 23

Plaintiffs, without opposition, request conditional certification under Rule 23(a).

### 1. The Numerosity Requirement is Satisfied

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Class totals approximately 3,981 employees and numerosity is satisfied.

### 2. Common Questions of Law and Fact Exist

Commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, this requirement "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Even though proposed class members "may possess different avenues of redress," so long as "their claims stem from the same source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a) (2)." *Id*. at 1019-20. Here, common questions include, primarily: (a) the compensability of off-the-clock work performed by Defendant's CSRs; (b) Defendant's failure to pay for all hours worked; and (c) the merits of Defendant's defenses including, but not limited to, its *de minimis* doctrine defense.

### 3. Claims of the Plaintiff Are Typical

Rule 23 typicality is satisfied. Typicality tends to merge with commonality, such that "a finding of commonality will ordinarily support a finding of typicality." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). A class plaintiff's claim is typical of those of other class members if the claims arise from the same practice or course of conduct and are based on the same legal theory." *In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Here, Plaintiffs' and Class Members' claims arise from the same practices and are based on the same legal theory, for the reasons set forth above.

### 4. Class Representatives and Class Counsel Are Adequate

Class Representatives and Class Counsel provide adequate representation of the interests of the Class Members. Class Counsel has represented employees in numerous wage and hour lawsuits brought as class actions, and has ample resources, experience, and expertise to draw upon in representing the class in this action. Here, the Class Representatives understand and accept their obligations as representative of the Class, and has adequately represented the Class Members' interests by devoting

1    time to prosecution of the claims including numerous detailed interviews with Class Counsel,

2    providing Class Counsel with substantial amounts of documents and information, and assisting Class

3    Counsel in reviewing and analyzing the factual defenses raised by Defendant.

4         **B.    The Prerequisites of Rule 23(b) Are Also Satisfied**

5              **1.    The Predominance Requirement**

6         Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law

7    and fact common to the members of the class predominate over any questions affecting only individual

8    members." As noted in *Cotter*, "settlement approval that takes place prior to formal class certification

9    requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant,

10   as well as the need for additional protections when the settlement is not negotiated by a court[-]designated

11   class representative, weigh in favor of a more probing inquiry than may normally be required under Rule

12   23(e)." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Here, Plaintiffs contend that

13   adjudication of the common issues surrounding Defendant's alleged employment practices could establish

14   Defendant's liability on a class-wide basis. Common legal issues could predominate because, in Plaintiffs'

15   view, all class/collective members were subject to the same policies and were subject to the same

16   uncompensated off-the-clock work. Although an individual class/collective member may have incurred

17   more damages than another, individual damages calculations will not defeat predominance. *See, e.g.,*

18   *Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016).

19        **C.    The Standard for Section 216(b) FLSA Settlement Approval is Met**

20        The FLSA provides that "any employer who violates the provisions of section 206 or section

21   207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum

22   wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). A plaintiff

23   may assert claims on behalf of himself and those similarly situated. *Id*. FLSA claims may be

24   compromised where a court reviews and approves a settlement in a private action for back wages under

25   29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl.*

26   *Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982).  If the settlement of

27   an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the

28

MEMORANDUM FOR PRELIMINARY APPROVAL                    Case No. 23-cv-00677-EMC

1    court may approve the settlement "in order to promote the policy of encouraging settlement of

2    litigation." *Id.* at 1354-55.

3         For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should

4    be approved.

5    **VI.  REQUESTED APPROVAL OF ATTORNEYS' FEES, LITIGATION EXPENSES, INCENTIVE AWARDS AND SETTLEMENT ADMINISTRATION FEES[3]**

6

7         **A.  The Requested Attorneys' Fees and Litigation Expenses are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval**

8         "[U]nder the FLSA an award of reasonable attorney fees is mandatory." *Yue Zhou v. Wang's*

9    *Rest.*, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007). Indeed, 29 U.S.C. § 216(b) provides that

10   "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

11   allow a reasonable attorney fee to be paid by defendant, and costs of the action."

12        In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an attorneys' fees

13   award in "mega-fund" class actions in the $50-200 million range. *See, e.g., Vizcaino*, 290 F.3d at 1047.

14   The Ninth Circuit has instructed that district courts are entrusted with wide discretion to approve fees

15   above or below that benchmark, based on the circumstances of the case. *See id.* at 1048 ("The 25%

16   benchmark rate, although a starting point for analysis, may be inappropriate in some cases."). Cases

17   with a relatively small fund of under $10 million will "often result in fees above 25%." *Craft v. Cty.*

18   *of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *Cicero v. DirecTV, Inc.*, 2010 WL

19   2991486, at *6 (C.D. Cal. July 27, 2010) ("[A] review of California cases in other districts reveals that

20   courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in

21   recovery of a common fund under $10 million."); *Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585,

22   at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the

23   common fund is below $10 million." (citing cases)). However, "[s]election of the benchmark or any

24   other rate must be supported by findings that take into account all of the circumstances of the case."

25   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Under *Vizcaino* the relevant factors

26

---

27   [3] Plaintiffs' Counsel recognizes that all requested allocations for attorneys' fees, litigation expenses, and incentive awards, are preliminary in nature and subject to final approval of the Court after the notice and objection period.

28

1   are: (1) results achieved; (2) risks of litigation; (3) whether there are benefits to the class beyond the

2   immediate generation of a cash fund; (4) whether the percentage rate is above or below the market

3   rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6)

4   reactions from the class; and (7) a lodestar cross-check. *Id.* at 1048-52.

5        Plaintiffs will address each of these factors and will fully brief the attorney fees prior to final

6   approval. However, it is a near certainty that the fee award in the Settlement Agreement will result in

7   a multiplier of less than 2.0, based on Class Counsel's current lodestar calculations and anticipated

8   additional work on the litigation. The fees requested are well within the range of approval. *See, e.g.,*

9   *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (approving fee award

10  of 36% of common fund settlement in wage and hour case); *Birch v. Office Depot, Inc.*, No. 06 Civ.

11  1690 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million settlement); *In re Heritage Bond*

12  *Litig.*, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving fees of  33.33% of

13  approximately $28 million common fund). Similarly, the modest costs, currently in the amount of up

14  to $33,207.82, are also well within the range of approval; particularly, in light of the fact the Parties

15  retained economic experts and attended mediation before the case was finally settled. (Exh. 2, Stoops

16  Decl. at ¶ 66). Class Counsel will provide a detailed itemization of costs prior to final approval in the

17  attorney fee and costs motion.

18        **B.    The Named Plaintiff Incentive Awards are Reasonable**

19        The Settlement Agreement calls for incentive awards for each Named Plaintiff in the amount of

20  $5,000 each. (Exh. 1, at ¶ 18(d)). It is customary for "named plaintiffs . . . [to be] eligible for reasonable

21  incentive payments" as part of a class action settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 977.

22  Service or incentive payments constitute "an essential ingredient of any class action," because they

23  provide an incentive to bring important cases that have a broad impact benefiting a class of

24  individuals, not just the plaintiff. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These

25  payments recognize the plaintiff's time, effort, and inconvenience, as well as the risk they are exposed

26  to in asserting their and others' rights in a particularly public and powerful manner.

27        The Named Plaintiffs assisted Class Counsel with investigation and evaluation of the class claims

28

MEMORANDUM FOR PRELIMINARY APPROVAL                    Case No. 23-cv-00677-EMC

1    throughout the litigation, including producing documents and attending multiple interviews. (Exh. 2,

2    Stoops Decl. at ¶ 62). Plaintiff Jarrett estimates that she spent between 40 to 72 hours on the litigation

3    (*Id.* at Tab 3, Jarrett Decl. at ¶ 17), and Plaintiff Ngethe estimates that she spent between 25 to 60

4    hours on the litigation. (*Id.* at Tab 3, Ngethe Decl. at ¶ 17). Each of the Named Plaintiffs satisfied their

5    obligations as class representatives, incurred many hours in service to this case and the Class Members,

6    and have been invaluable in developing the claims, conducting discovery into them, and in reaching the

7    Settlement that is before the Court for approval. Plainly put, there would be no Settlement without the

8    efforts of the Named Plaintiffs.

9            **C.    The Administrator and Administration Fees Should Be Approved**

10            The Settlement Agreement provides for an allocation of funds to cover the costs of third party

11    settlement administration. Currently, it is estimated that the settlement administration cost for this case

12    will not exceed $36,744. (Exh. 2, Stoops Decl. at ¶ 65). The settlement administration duties, as outlined

13    in the Settlement Agreement, will be handled by Atticus Administration LLC. (*Id.* at ¶ 64). Atticus

14    Administration LLC, is well-respected and has been utilized successfully by Class Counsel in numerous

15    settlements of similar nature to the instant litigation. (*Id.*). Completion of settlement administration for a

16    total fee $40,000 or less is reasonable given the number of individuals involved in the Settlement.

17    Therefore, Plaintiffs request approval of Atticus Administration LLC as the administrator and of the

18    allocation of up to $40,000 to administration expenses.

19    **VII.    THE PROPOSED METHOD OF NOTICE IS APPROPRIATE**

20            The notice here satisfies the requirements that the class notice must be the "best notice that is

21    practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and that the Court "direct notice in

22    a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)

23    (1). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to

24    alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*

25    *Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation

26    marks omitted). Notice mailed to each class member "who can be identified through reasonable effort"

27    constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). For any class

28

certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

The form and content of the notice here is consistent with modern best practices set forth by the Federal Judicial Center and was negotiated and agreed upon by counsel for the parties. The notice encourages Class Members to contact the Claims Administrator with any questions, and it provides telephone, mail, e-mail, and facsimile contact information for the Claims Administrator. *Id*

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 477-76 (E.D. Cal. 2009) (holding notice involving similar mail procedures as here meets both Rule 23(e) and Rule 23(c) requirements); *Adams v. Inter-Con Security Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466, at *4 (N.D. Cal. Oct. 30, 2007) (finding that notice using similar mail procedure as here "satisfies the notice requirements of Rule 23(e), and ... all other legal and due process requirements").

## VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

If the Court grants preliminary approval, a date for the final approval hearing needs to be set and included in the class notice. The parties request that the Court adopt the following schedule for purposes of effectuating the various steps in the settlement approval process described above.

| Event | Proposed Date |
|---|---|
| Preliminary Approval Hearing Date | July 11, 2024 |
| Entry of Preliminary Approval Order | July 11, 2024 (assumed; balance of dates work off this assumed date) |
| Defendant to provide the Settlement Administrator with Class List | July 25, 2024 (14 days after entry of Preliminary Approval Order) |
| Deadline for the Settlement Administrator to mail Class Notice Packet (Notice Mailing Date) | August 8, 2024 (14 days after receipt of Class List) |

| Event | Proposed Date |
|---|---|
| Deadline for Filing Motion for Attorneys' Fees and Litigation Expenses | September 9, 2024 (14 days prior to Deadline for Class Member Opt Out Requests and Objections) |
| Deadline for Class Members to submit Opt Out Requests and Objections | September 23, 2024 (45 days after Notice Mailing Date) |
| Deadline for filing Final Approval Motion | 35 days prior the Final Approval Hearing |
| Proposed Final Approval Hearing Date | October 31, 2024 |

## IX.    CONCLUSION

For the foregoing reasons Plaintiffs, without opposition from Defendant, respectfully requests that the Court enter an order: (1) preliminarily certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23") and conditionally certifying an FLSA collective for settlement purposes under 29 U.S.C. §201., *et seq.* (as defined in the Parties' Settlement Agreement); (2) preliminarily approving the Parties' Settlement; (3) preliminarily appointing Plaintiffs Adrianna Jarrett and Mary Ngethe as Class Representatives for the Class/Collective and Sommers Schwartz, P.C. as Class Counsel; (4) approving the form of the Parties' proposed Notice; (5) approving the appointment of Settlement Administrator; and (6) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, litigation expenses, and incentive awards.

SOMMERS SCHWARTZ, P.C.

DATED:  June 7, 2024

By: /s/ Kevin J. Stoops
Kevin J. Stoops (SBN 332200)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
kstoops@sommerspc.com

*Attorneys for Plaintiff and Proposed Collective and Class Members*

1

## **CERTIFICATE OF SERVICE**

2

3        I certify that on June 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

4

5                                        */s/Kevin J Stoops*

6                                         *Kevin J. Stoops*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM FOR PRELIMINARY APPROVAL                          Case No. 23-cv-00677-EMC