Kevin J, Stoops, Esq. (SBN 332200)
kstoops@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 746-4001

*Attorney for Plaintiffs*
*and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADRIANNA JARRETT and MARY NGETHE** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**[24]7.AI, INC.**,<br><br>Defendant | Case No.:  23-cv-00677-EMC<br><br>**NOTICE OF UNOPPOSED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**<br><br>Honorable Edward M. Chen<br><br>Complaint Filed: February 15, 2023<br><br>Final Approval Hearing: November 26, 2024 at 3:30 p.m. |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE** that the matter may be heard before the Honorable Edward M. Chen

3 in Courtroom 5 of this Court, located on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate

4 Avenue, San Francisco, California 95113 on November 26, 2024 at 3:30 p.m. In this motion, Plaintiffs

5 respectfully request entry of an order (1) certifying a class for settlement purposes under the Federal Rules

6 of Civil Procedure, Rule 23 (e.g., "Rule 23") and certifying a FLSA collective for settlement purposes

7 under 29 U.S.C. § 201, *et seq.* (as defined in the Parties' Settlement Agreement); (2) finally approving the

8 Parties' Settlement Agreement; (3) appointing Plaintiffs Adrianna Jarrett and Mary Ngethe as Class

9 Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; and (4) awarding fees

10 to the third-party Settlement Administrator Atticus Administration, LLC.

11          Plaintiffs respectfully submit good cause exists for granting the Motion for the reasons set forth in

12 the concurrently filed documents. Defendant's counsel has reviewed the documents being filed in support

13 of this Motion and does not oppose it, though Defendant has reserved the right to submit a Notice of Non-

14 Opposition, together with any additional points and authorities for the Court's consideration.

15          This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities and

16 other documents filed herewith, including the Settlement Agreement, the Declaration of Class Counsel,

17 the [Proposed] Order, and the other pleadings and records on file in this action, and the presentations of

18 counsel and such oral or documentary evidence as may be presented at the hearing on this unopposed

19 Motion.

20

21                                             SOMMERS SCHWARTZ, P.C.

22 DATED:  October 9, 2024                By: /s/ Kevin J. Stoops
                                             Kevin J. Stoops (SBN 332200)
23                                             SOMMERS SCHWARTZ, P.C.
                                             One Towne Square, Suite 1700
24                                             Southfield, Michigan 48076
                                             Telephone: (248) 355-0300
25                                             kstoops@sommerspc.com

26
                                             *Attorneys for Plaintiff and Proposed Collective and*
27                                             *Class Members*

28

1

2

### **CERTIFICATE OF SERVICE**

3

4     I certify that on October 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

5

6                    */s/Kevin J Stoops*
                    *Kevin J. Stoops*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kevin J, Stoops, Esq. (SBN 332200)
kstoops@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 746-4001

*Attorney for Plaintiffs
and Proposed Class and Collective Members*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADRIANNA JARRETT and MARY NGETHE** individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>**[24]7.AI, INC.**,<br><br>             Defendant | Case No.:  23-cv-00677-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**<br><br>Honorable Edward M. Chen<br><br>Complaint Filed: February 15, 2023<br>Trial Date: None Set<br><br>Hearing (if necessary): November 26, 2024  at 3:30 p.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................... 1

II.   PROCEDURAL HISTORY OF THE CASE ......................................................... 2

    A.  The Proceedings, Pleadings, and Parties.......................................................... 2
    B.  Summary of Discovery Conducted Prior to Mediation ................................... 4
    C.  Reasonableness of Settlement ......................................................................... 5

III.  SETTLEMENT TERMS.......................................................................................... 7

    A.  Value of the Settlement to the Class ............................................................... 7
    B.  Size of the Class/Collective and Class Definition.......................................... 8
    C.  Nature of Payments, Released Claims and Released Parties............................ 9
    D.  Notice, Opt Out and Objection Periods ........................................................ 11
    E.  Attorneys' Fees, Litigation Expenses, Incentive Awards and Settlement Administration. 12
    F.  Notice Procedures.......................................................................................... 12
    G.  Issuance of Notice and Class Member Reaction ........................................... 13

IV.   ARGUMENT IN SUPPORT OF FINAL APPROVAL ...................................... 13

    A.  The Best Practicable Notice of Settlement Has Been Provided to the Class/Collective .... 13
    B.  Final Approval Standards Under Rule 23 and the FLSA...................................... 14
    C.  The Settlement Agreement is Presumptively Fair Because No Class/Collective Members Have Objected to the Settlement, the Significant Discovery Conducted, Class Counsel's Experience, and Arms-Length Negotiations…………………………………………...15

        1.    Zero Objections and Zero Opt Out Requests …………………………16
        2.    The Parties Enganged in Substantial Investigation and Analysis of the Legal Issues ................................................................................. ………..17
        3.    The Reccomendations of Experienced Counsel Favor Approval of the Settlement Agreement ............................................................................ 17
        4.    The Parties Participated in Arms-Length Negotiations Before an Experienced Nuetral Mediator ........................................................................................ 18

    D.  The Settlement Agreement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation................................................................. 18

        1.    The Value of the Settlement Favors Final Approval ...................................... 18
        2.    Further Litigation Would Involve Risk, Expense, Delay and Burden on Class/Collective Members........................................................................ 20

    E.  The Court Should Grant Final Certification and Collective Action Designation ............. 21
    F.  The Settlement Administration Fees Should be Approved……………………………21

V.    CONCLUSION ........................................................................................................ 21

**TABLE OF AUTHORITIES**

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)................................................................. 15, 17, 19

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010)............................................................ 16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................... 19

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................ 2, 14, 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................ 14

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ................................................................... 15, 17

*Greko v. Diesel U.S.A., Inc.*,
    2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ............................................... 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................. 14, 17, 19

*Hughes v. Microsoft Corp.*,
    98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ......................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (8th Cir. 2000) ......................................................................... 17

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................... 17

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................... 19

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ..................................................................... 14

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987)................................................................. 15

*Mandujano v. Basic Vegetable Prods. Inc.*,
    541 F.2d 832 (9th Cir. 1976) ......................................................................... 16

*Mora v. Harley-Davidson Credit Corp.*,
    2014 WL 29743 (E.D. Cal. Jan. 3, 2014) ...................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................ 14

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).............................................................. 16, 19

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................ 14, 15, 19

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ....................................................................................... 15

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) ....................................................................................... 14

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................... 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................... 2, 14

- ii -

*Thieriot v. Celtic Ins. Co.*,
    2011 WL 1522385 (N.D. Cal. April 21, 2011)............................................................................ 20
*Tijero v. Aaron Bros., Inc.*,
    2013 WL 6700102 (N.D. Cal. Dec. 19, 2013).......................................................................... 18
*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................................................... 15

**Statutes**

29 U.S.C. § 201.............................................................................................................................. 1, 21
29 U.S.C. § 216(b) ......................................................................................................................... 8, 9
Section 1542 of the California Civil Code..................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 23(e) ......................................................................................... 14
Federal Rules of Civil Procedure, Rule 23 .............................................................................. 1, 2, 21
Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure................................................... 21

**Other Authorities**

*Manual for Complex Litigation (Third)* § 30.42 (1995) ............................................................. 18
*Manual for Complex Litigation, Fourth* ,
    (Fed. Judicial Center 2004) ("*Manual*")................................................................................ 15

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This is a FLSA and common law wage-and-hour hybrid collective/class action. Plaintiffs Adrianna Jarrett and Mary Ngeth (hereinafter "Plaintiffs") have settled this litigation for the gross settlement amount of $1,100,000 on behalf of approximately 3,983 hourly, non-exempt customer service representatives engaged by Defendant [24]7.ai, Inc. (hereinafter "Defendant").

In this unopposed Motion, Plaintiffs request entry of an order (1) certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (hereinafter "Rule 23") and certifying a FLSA collective for settlement purposes under 29 U.S.C. § 201, *et seq.* (as defined in the Parties' Settlement Agreement (Exh. A)); (2) finally approving the Parties' Settlement Agreement and all terms therein; (3) appointing Plaintiffs Adrianna Jarrett and Mary Ngethe as Class Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; and (4) awarding fees to the third-party Settlement Administrator Atticus Administration LLC.

The Settlement Agreement resolves litigation over Plaintiffs' and Class Members' claims that Defendant violated the Fair Labor Standards Act ("FLSA") and is subject to breach of contract and unjust enrichment claims under state common law, by failing to pay Plaintiffs and the Class Members for off-the-clock work and required overtime. The Settlement Agreement is the product of arms-length negotiations by experienced counsel, after significant investigation, and recognition of the strengths and weaknesses of each side's positions.

The $1,100,000 settlement readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." The Class has responded overwhelmingly favorably to the Settlement. *See* Declaration of Bryn Bridley (Atticus Administration, LLC) (Exh. C at ¶¶ 9-10). The objection and exclusion period closed on September 19, 2024. Zero objections were made to the Settlement. Likewise, zero Class Members submitted opt out request forms. *Id.* The average estimated payment is $162.35, and the highest estimated payment is $1,737.41 (*Id.* at ¶ 11).

Furthermore, Class Counsel (who are among the most highly experienced attorneys in the country handling complex wage and hour class and collective actions) have conducted sufficient

discovery to enable them to adequately evaluate the claims and defenses in the action. (Exh. B, Stoops Decl. at ¶¶ 39-59). Lastly, the Settlement Agreement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). (A proposed order of Final Approval is attached as Exhibit D).

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings, and Parties

On February 15, 2023, Plaintiffs filed this lawsuit, asserting the following claims:

➤ Count I: Failure to Pay Overtime – Collective Action under the Fair Labor Standards Act ("FLSA")

➤ Count II: Failure to Pay Wages – Rule 23 Nationwide Class Action for Breach of Contract

➤ Count III: Failure to Pay Wages – Rule 23 Nationwide Class Action for Unjust Enrichment (pled in the alternative to Count II) [ECF No. 1].

In early March 2023 counsel for the Parties exchanged multiple communications and held meet and confer conferences concerning Defendant's claim that Plaintiffs should amend their Complaint to remove alleged proprietary business information contained in the Complaint. (Exh. 2, Stoops Decl. at ¶ 11). To address Defendant's concerns, Plaintiffs' filed their First Amended Complaint ("FAC") on April 18, 2023. [ECF No. 22]. The FCA contains the same claims stated in Plaintiffs' original Complaint. (*Id.* at ¶ 12).

On April 18, 2022, Plaintiffs filed their pre-discovery Motion for Conditional Certification and Issuance of Court Authorized Notice to FLSA Collective. [ECF No. 21]. Thereafter, the Parties held multiple meet and confer conferences to discuss whether Defendant would stipulation to conditional certification and issuance of notice to the FLSA Collective. (Exh. 2, Stoops Decl. at ¶ 14).

On May 2, 2023, the Defendant filed an answer, which listed 24 affirmative defenses. [ECF No. 28].

On June 28, 2023, the Parties submitted a Joint Stipulation to Conditional Certification of FLSA Collective Action Notice. [ECF No. 40]. The Court rejected certain aspects of the Parties

proposed Notice [ECF No. 41], requiring the Parties to file an Amended Joint Stipulation to Conditional Certification of FLSA Collective Action Notice, along with a modified proposed Notice, on July 5, 2023. [ECF No. 42]. The Court approved the modified Notice on July 7, 2023. [ECF No. 44]. On August 4, 2023, the FLSA Notice was issued to 3,897 putative FLSA collective members by professional services provider Atticus Administration, LLC. (Exh. 2, Stoops Decl. at ¶ 19).

During the Notice period, counsel for the Parties held multiple meet and confer conferences to discuss how to proceed with the litigation following the end of the notice period. These conferences included conversations about the scope of representative discovery, the necessity of issuing subpoenas to multiple staffing companies to obtain time and pay records for members of the opt-in Collective, and the potential of exploring resolution for the FLSA opt-in Collective and/or the entire putative Class. (*Id.* at ¶ 20). Ultimately, the Parties decided to submit the case to mediation following the conclusion of the FLSA Notice period. (*Id.* at ¶ 21).

On August 22, 2023, counsel for Defendant notified Plaintiffs' Counsel that 83 individuals had been inadvertently omitted from the collective list provided to Atticus Administration, LLC. (*Id.* at ¶ 22). On August 29, 2023, the Parties submitted a Joint Stipulation seeking approval to issue notice to the 83 omitted individuals. [ECF No. 65]. The Court granted that request on August 31, 2023. [ECF No. 66]. Atticus Administration, LLC, issued notice to the 83 omitted individuals on September 11, 2023. (Exh. B, Stoops Decl. at ¶ 25). At the conclusion of the original and supplemental opt-in deadlines a total of 848 collective members had affirmatively opted into the case as FLSA party plaintiffs (out of the 3,980 who were issued notice). (*Id.* at ¶ 26).

In an effort to obtain the fact discovery concerning the 848 opt-ins, including information necessary to analyze their potential damages, Defendant issued subpoenas to 14 different staffing companies on September 6, 2023. (*Id.* at ¶ 27). The majority of the staffing companies responded to the subpoenas by way of producing time and pay records for the opt-ins that worked for Defendant through their agency. One of the staffing companies refused to comply with the subpoena and, instead, lodged objections. (*Id.* at ¶ 28). The Parties agreed to utilize the pay and time records received by way of the subpoenas in an effort to determine the amount of potential damages owed to the opt-in

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Case No. 23-cv-00677-EMC

collective members and putative Class. (*Id.* at ¶ 29).

On April 16, 2024, the Parties attended a private mediation with nationally respected wage and hour mediator Michael Dickstein of San Francisco. (*Id.* at ¶ 30). After a full day, contentious mediation, the Parties were able to reach an agreement. A Memorandum of Understanding was executed the same day, and, over the next few weeks, the Parties negotiated and finalized the long-form settlement agreement. The Parties filed a Notice of Settlement on April 17, 2024. (ECF No. 83).

On June 7, 2024, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class and Collective Settlement and other Related Relief (hereinafter the "Preliminary Approval Motion"). [ECF No. 86]. On June 18, 2024, the Court issued its Order re Supplemental Briefing pursuant to which it directed the Parties to address certain questions and concerns the Court had concerning the Parties' Settlement. [ECF No. 88]. Plaintiffs submitted the requested supplemental briefing on June 25, 2024. [ECF No. 89].

On July 11, 2024, the Court heard oral argument on the Preliminary Approval Motion. During the hearing the Court directed to Parties to make minor modifications to the settlement notice documents and to report back to the Court concerning the feasibility of tendering Class Member payments electronically. On July 19, 2024, in compliance with the Court's direction during the preliminary approval hearing, Plaintiffs submitted a second supplemental brief in support of the Preliminary Approval Motion. [ECF No. 93]. On July 22, 2024, the Court entered its Order granting the Preliminary Approval Motion. [ECF No. 94].

**B.    Summary of Discovery Conducted Prior to Mediation**

Prior to attending mediation, Class Counsel reviewed and analyzed the following materials, that consisted of hundreds of pages of documents in addition to substantial electronic data:

    a.    Information pertaining to the number of Class Members engaged by Defendant during the statute of limitations period applicable to the case, along with metrics related to rate of pay; dates of engagement; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

    b.    Data modeling and related statistics identifying off-the-clock work by the Class Members;

c.    Voluminous time and pay records;

d.    Time-keeping policies;

e.    Training policies and materials;

f.    Employee handbook;

g.    Developing a survey that was disseminated to the opt-in collective members and analyzing the survey results/data; and

h.    Documents provided to counsel by the Plaintiffs. (Exh. 2, Stoops Decl. at ¶ 40).

**C.    Reasonableness of Settlement**

Defendant asserted numerous legal and factual defenses to Plaintiffs' claims and class certification efforts including, among others, that:

a.  The time Plaintiffs and the Class Members sought compensation for was not compensable under the Portal-to-Portal Act.

b.  The time Plaintiffs and the Class Members sought compensation for was not compensable because it was *de minimis*.

c.  Defendant will seek to compel arbitration with respect to at least one-third of the Collective/Class Members who are subject to individual arbitration agreements and class waivers.

d.  Defendant did not employ the Class Members and any liability for alleged wage and hour claims must be borne by the 14 staffing companies.

e.  Defendant maintains written employment policies, which prohibit all off-the-clock work.

f.  Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

g.  Defendant will tender Class Members to testify that they did not work off-the-clock and/or that the alleged off-the-clock work is exaggerated.

h.  The putative Class Members engaged in personal activities at the beginning of their shifts.

i.  Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks he describes.

j.  The putative Class Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

k.  Plaintiffs and the Class Members were paid for all worked performed.

- 5 -

l.  The pre- and post-shift log-in and log-out activities are not compensable because the said activities were not integral and indispensable to the Class Members' principal work activities.

m.  The putative Class Members will not satisfy the commonality and predominance elements to obtain Rule 23 class certification.

n.  Plaintiffs and the Class Members will not be able to establish that Defendant's alleged violations were willful.

o.  Plaintiff and the Class Members will not be able to recover liquidated damages. (Exh. 2, Stoops Decl. at ¶ 47).

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Class Counsel understandably takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiffs' wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. Specifically, settling this case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation.  Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (individual class member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by Rule 23 certification motion practice on Plaintiffs' common law claims, numerous dispositive motions, and eventually one or more trials.  It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 48).

To evaluate and negotiate settlement and take part in mediation, Class Counsel retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP. (*Id.* at ¶ 49).

In their complaint, Plaintiffs estimated a maximum of fourteen (14) to fifteen (27) minutes of off-the-clock work per day associated with the pre-, mid- and post-shift log-in and log-out activities. However, Defendant insisted that these estimations are grossly inflated, that most of the Class Members do not perform substantial, if any, off-the-clock work, and that the alleged time is not compensable under the Portal-to-Portal Act and the *de minimis* doctrine. (*Id.* at ¶ 52). Affording due consideration to the facts of the case and Defendant's evidence, Class Counsel determined that reasonable estimation of the actual maximum damages equals six (6) to eight (8) minutes per day. (*Id.*

1  at ¶ 53).

2  Utilizing the six (6) to eight (8) minute per day estimation – and extrapolating the timekeeping

3  and pay record mediation data to extend from February 2020 (three years prior to Complaint filing)

4  through April 16, 2024 (date of mediation)  –  Class Counsel and the expert economist developed a

5  time consuming and complicated damage analysis of all claims and calculated the Defendant's

6  maximum exposure for all claims (including overtime wages, gap time damages for straight time

7  wages, and liquidated damages on all unpaid overtime wages) fell in the range of $1,409,303 to

8  $1,891,147. (*Id.* at ¶ 54). Based on the damage analysis conducted by Class Counsel and their damages

9  expert, and in light of the factual and legal defenses identified above, the $1,100,000 settlement

10  equates to 58.17% to 78.05% of Defendant's $1,409,303 to $1,891,147 maximum damage exposure.

11  (*Id.* at ¶ 55).

12  **III.    SETTLEMENT TERMS**

13  The Settlement Agreement provides as follows:

14  **A.    Value of the Settlement to the Class**

15  The settlement provides for a non-reversionary Gross Settlement Amount of $1,100,000.

16  (Exh.A, at ¶2). The Net Settlement Amount means the Gross Settlement Amount minus Class

17  Counsel's attorneys' fees and litigation expenses, the settlement administration costs, and the Plaintiff

18  incentive awards.  (*Id.* at ¶ 2(u)). The anticipated Net Settlement Amount is approximately $643,370,

19  based on the following deductions from the $1,100,000 Gross Settlement Amount: $5,000 to each of

20  the Named Plaintiffs for incentive awards; $40,000 for settlement administration fees; $366,630 for

21  attorneys' fees (33.33% of the Gross Settlement Amount); and up to $40,000 in litigation expenses.

22  (*Id.* at ¶ 18(a-d)).

23  The Net Settlement Amount shall be split into two buckets: 1) the "FLSA Settlement

24  Payment" bucket, which shall consist of 75% of the Net Settlement Amount; and 2) the "Rule 23

25  Settlement Payment" bucket, which shall consist of 25% of the Net Settlement Amount. (*Id.* at ¶

26  18(e)). After splitting the into the "FLSA Settlement Payment" bucket and the "Rule 23 Settlement

27  Payment" bucket, Individual FLSA and Rule 23 Settlement Payments will be calculated from the

28

amounts in each bucket as follows:

1. The Settlement Administrator will use the number of Workweek(s) worked by Settlement Class Members during the Class Period, which will be determined based on the information in the Class List Defendant provides to the Settlement Administrator.

2. Each of the Settlement Class Members is eligible to receive a *pro rata* share of the FLSA Settlement Payment bucket and the Rule 23 Settlement Payment bucket based on their share of the total number of Workweeks during the Class Period.

3. The value of a single Workweek during the Class Period shall be determined by dividing the FLSA Settlement Payment bucket and the Rule 23 Settlement Payment bucket by the total number of Workweeks during the Class Period worked by all Settlement Class Members. Each Settlement Class Member shall be allocated a gross payment equal to their individual Workweeks during the Class Period multiplied by the value of a single Workweek during the Class Period.

4. The individual FLSA Settlement Payments and Rule 23 Settlement Payments (collectively, Individual Settlement Payments) shall be allocated as follows: (i) fifty percent (50%) of each Settlement Class Member's Individual Settlement Payments will be allocated to settlement of wage claims (the "Wage Portions"); and (ii) the remaining fifty percent (50%) will be allocated to liquidated damages, penalties and interest. The Settlement Administrator will withhold the Settlement Class Members' share of taxes and withholdings with respect to the wage portion of the Individual Settlement Payments, and issue checks to Settlement Class Members for their net of the FLSA Settlement Payment and Rule 23 Settlement Payment, provided that no Settlement Class Member shall receive an Individual Settlement Payment of less than Twenty Dollars and Zero Cents ($20.00). The wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The portion allocated to liquidated damages, penalties and interest (i.e., Non-Wage Portions) are not subject to wage withholdings and will be reported in IRS 1099 Forms (if required). (*Id.* at ¶ 18(e), 19(a)).

## B. Size of the Class/Collective and Class Definition

Under the Settlement Agreement, "Class Members" are defined as:

(i) all non-exempt customer service representatives ("CSRs") engaged by Defendant during the Class Period,[1] as follows: (i) the 848 non-exempt CSRs, including Plaintiffs, who joined this Action by submitting opt-in consent forms (available at Dkt. Nos. 1-3; 1-4; 50-1; 51-1' 52-1; 53-1; 54-1; 55-1; 56-1; 57-1; 58-1; 59-1; 60-1; 61-1; 62-1; 63-1; 64-1; 67-1; 68-1; 70-1; 71-1; 72-1; 73-1; 74-1; 75-1; 76-1) following Court approval of pre-discovery conditional certification in this Action pursuant to 29 U.S.C. § 216(b) ("Collective Opt-in(s)"); and (ii) all non-exempt CSRs who were engaged by Defendant during the Class Period (estimated at 3,133 individuals by the Parties) but who did not submit opt-in consent forms during the pre-discovery conditional certification period. ("Rule 23 Member(s)"). (*Id.* at ¶ 2(e)).

---

[1] Class Period as defined in the Settlement Agreement "shall be February 15, 2020, through the date the Court grants Preliminary Approval of this Agreement or 60 calendar days from April 16, 2024 (whichever date is earlier). (Id. at ¶ 2(i)).

Further, "Settlement Class Members" are defined as:

(i) the Collective Opt-Ins (*i.e.*, the 848 non-exempt CSRs, including Plaintiffs, who joined this Action by submitting opt-in consent forms (available at Dkt. Nos. 1-3; 1-4; 50-1; 51-1' 52-1; 53-1; 54-1; 55-1; 56-1; 57-1; 58-1; 59-1; 60-1; 61-1; 62-1; 63-1; 64-1; 67-1; 68-1; 70-1; 71-1; 72-1; 73-1; 74-1; 75-1; 76-1) following Court approval of pre-discovery conditional certification in this Action pursuant to 29 U.S.C. § 216(b)); and (ii) the 3,133 non-exempt CSRs who were engaged by Defendant during the Class Period who do not timely file Opt Out Requests and consent to the terms of the Settlement by negotiating checks in the gross amount of their Individual Settlement Payments. (*Id*. at ¶ 2(ii)).

### C.     Nature of Payments, Released Claims and Released Parties

This is a common fund settlement with no reversion, and every Class Member will be sent Individual Settlement Payments. (*Id.* at ¶ 23). Specifically, each Class Member will receive an Individual Settlement Payment equaling their pro-rata share of the FLSA Settlement Payment bucket and an Individual Settlement Payment equaling their pro-rata share of the Rule 23 Settlement Payment bucket. (*Id.* at ¶ 18(e)(ii)). Individual Settlement Payment Checks will be valid for 180 calendar days. (*Id.* at ¶ 25(f)). Funds from checks that are not negotiated within the 180-day period will be transmitted to *cy pres* designee: Bay Area Legal Aid (or such other *cy pres* designee as ordered by the Court). (*Id.*).

The Settlement Agreement defines the following releases:

"Settled FLSA Claims" means and any and claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the Class Period and that are based on or are reasonably related to claims for unpaid wages (including but not limited to claims for regular wage, overtime and gap time) under the FLSA. Settled FLSA claims <u>exclude</u> claims that are: (i) not based on or reasonably related to the claims asserted in the Action; and/or (ii) expressly non-waivable under the law, including claims for retaliation, wrongful termination, unemployment, disability, worker's compensation; and/or (iii) outside of the Class Period. (*Id.* at ¶ 2(gg)).

"Settled Rule 23 Class Claims" means and any and claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the Class Period and that are based on or are reasonably related to claims under applicable state and common law wage theories (including but not limited to claims for breach of contract and/or unjust enrichment). Settled Rule 23 Class claims <u>exclude</u> claims that are: (i) not based on or reasonably related to the claims asserted in the Action; and/or (ii) expressly non-waivable under the law, including claims for retaliation, wrongful termination, unemployment, disability, worker's compensation; and/or (iii) outside of the Class Period. (*Id.* at ¶ 2(hh)).

As of the Effective Date[2] and full funding of the Gross Settlement Amount, all Settlement Class Members shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all Settled FLSA Claims and Settled Rule 23 Class Claims during the Class Period against any and all Released Parties. (*Id*. at ¶ 11). The Released Parties shall mean Defendant [24]7.ai, Inc. and each of its parent companies, subsidiaries, affiliates, assigns, predecessors, successors, owners (whether managers, partners, shareholders), directors, employees (current and former), board members and agents. (*Id*. at ¶ 2(cc)).

The checks issued to Class Members for their Individual Settlement Payments will include the following release language:

> Release Language on FLSA Claim Settlement Checks. The Settlement Administrator shall include the following release language on the back of each FLSA Claim settlement check, as appropriate:
>
> a. For Collective Opt-Ins: "This check is your FLSA settlement payment in connection with the court-approved collective and class action Settlement in the case entitled *Jarrett et al v. [24]7.ai, Inc*., Case No. 23-cv-00677-EMC, pending in the United States District Court, Northern District of California (the "Action"). You previously submitted a consent to join form and affirmatively joined the action as a FLSA opt-in. By signing or cashing your check, you acknowledge that you are participating in the Settlement and that you are releasing the Settled FLSA Claims against the Released Parties (as those terms are defined in the Class Notice)." (*Id*. at ¶ 15(a)).
>
> b. For Rule 23 Members: "This check is your FLSA settlement payment in connection with the court-approved collective and class action Settlement in the case entitled *Jarrett et al v. [24]7.ai, Inc*., Case No. 23-cv-00677-EMC, pending in the United States District Court, Northern District of California, (the "Action"). By signing or cashing this check, you are consenting to join the Action and are fully, finally, and forever releasing, settling, compromising, relinquishing, and discharging the Released Parties from any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the period of February 15, 2020 through

---

[2] "Effective Date" as defined in the Settlement Agreement "means 1) if there are no objections to the Settlement, the first business day following the last of the following occurrences: (i) the date the Court enters the Final Approval Order and Judgment; (ii) if there is an objection, but no appeal is taken from the Final Approval Order and Judgment, thirty-one (31) calendar days after the Court enters the Final Approval Order and Judgment; or (iii) if an appeal is taken from the Final Approval Order and Judgment, then the date of final resolution of that appeal (including any requests for rehearing and/or petitions for certiorari), resulting in final and complete judicial approval of this Agreement in its entirety, with no further challenge to the Agreement being possible." (*Id*. at ¶ 2(m)).

the date the Court grants Preliminary Approval of the Settlement or 60 calendar days from April 16, 2024 (whichever date is earlier), and that are based on or are reasonably related to claims for unpaid wages (including but not limited to claims for regular wages, overtime, and gap time) under the FLSA.  By signing or cashing your check, you acknowledge that you have read the Class Notice, that you consent to join the Action as a FLSA opt-in and participate in the Settlement, and that you are releasing the Settled FLSA Claims against the Released Parties (as those terms are defined in the Class Notice)." (*Id*. at ¶ 15(b)).

Release Language on Rule 23 Settlement Checks. The Settlement Administrator shall include the following release language on the back of each Rule 23 Settlement check:

"This check is your Rule 23 settlement payment in connection with the court-approved collective and class action Settlement in the case entitled *Jarrett et al v. [24]7.ai, Inc.*, Case No. 23-cv-00677-EMC, pending in the United States District Court, Northern District of California, (the "Action"). By signing or cashing this check, you are fully, finally, and forever releasing, settling, compromising, relinquishing, and discharging the Released Parties from any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, whether known or unknown, that arise during the period of February 15, 2020 through the date the Court grants Preliminary Approval of the Settlement or 60 calendar days from April 16, 2024 (whichever date is earlier), and that are based on or are reasonably related to claims under applicable state and common law wage theories (including but not limited to claims for breach of contract and/or unjust enrichment). By signing or cashing your check, you acknowledge that you have read the Class Notice, that you consent to participate in the Settlement, and that you are releasing the Settled Rule 23 Class Claims against the Released Parties (as those terms are defined in the Class Notice)." (*Id*. at ¶ 15(c)).

The Named Plaintiffs will provide a general release, including a waiver of the provisions of Section 1542 of the California Civil Code. (*Id*. at ¶ 12).

**D.     Notice, Opt Out and Objection Periods**

Class Members shall have forty-five (45) calendar days from the mailing of the Class Notice to submit and Opt Out Request Form or to file an Objection to the Settlement. (*Id*. at ¶ 2(v-x)). Any Class Members who have their Class Notice(s) remailed will have an additional fourteen (14) calendar days beyond the Objection Period to file an Opt Out Request Form or Objection. (*Id*. at ¶ 2(w)). Each Objection (i.e., an objection to the Settlement that a Rule 23 Member submits in writing to the Settlement Administrator) must: (i) contain the name and case number of the Action; (ii) contain the full name, address, and telephone number of the objecting Rule 23 Member; (iii) be signed by the Rule 23 Member; (iv) contain a written statement of all grounds for the Objection accompanied by any legal support for such Objection; (v) contain copies of any papers, briefs, or other documents upon which

the Objection is based; and (vi) be emailed, postmarked or fax stamped on or before the Objection Period and returned to the Settlement Administrator at the email address, mailing address and/or fax number specified in the Class Notice. (*Id*. at ¶ 2(v)). Each Opt Out Request (i.e., a request by a Rule 23 Member to be excluded from the Settlement) must: (i) contain the name and case number of the Action; (ii) contain the full name, address, and telephone number of the Rule 23 Member requesting exclusion from the Settlement; (iii) be signed by the Rule 23 Member; (iv) contain a clear written statement indicating that the Rule 23 Member seeks exclusion from the Settlement; and (v) be emailed, postmarked or fax stamped on or before the Objection Period and returned to the Settlement Administrator at the email address, mailing address or fax number specified in the Class Notice.

### E.    Attorneys' Fees, Litigation Expenses, Service Awards and Settlement Administration

From the Gross Settlement Amount, $366,630 (33.33% of the Gross Settlement Amount) shall be allocated to Class Counsel for their attorneys' fees. (*Id*. at ¶ 18(a)). Additionally, Class Counsel may seek reimbursement of litigation expenses which are estimated to be no more than $40,000 by the conclusion of the Settlement. (*Id*. at ¶ 18(b)).

For their assistance in obtaining relief for the Class, the Named Plaintiffs (Adrianna Jarrett and Mary Ngethe) may seek incentive awards in the amount of $5,000 each. (*Id.* at ¶ 18(d)). Finally, the Settlement Agreement allocates up to $40,000 for settlement administration fees (*Id*. at ¶ 18(c))., but the bid accepted for the administration of the settlement was $36,744.  (Exh. B, Stoops Decl. at ¶ 61).

### F.    Notice Procedures

Within fourteen (14) calendar days after the date that the Court grants preliminary approval of the Settlement, Defendant shall provide to the Administrator a list of all Class Members ("Class List") and all information necessary to locate Class Members, process payments, and process claims for payments, including, but not limited to, Class Member workweeks or dates of engagement, last known addresses, last known email addresses, social security numbers, and any other information required to effectuate the Agreement. (Exh. A, at ¶ 2(g), 22(a)). Within fourteen (14) calendar days of receiving the Class List, Administrator shall mail and distribute to all Class Members a notice of this settlement informing them of the basic information regarding its terms, how to submit objections, how to exclude

1    themselves from this proposed settlement, their estimated Individual Settlement Payments, how to

2    dispute the allocated number of workweeks, and the date for a final approval hearing (the "Class

3    Notice," in a form substantially similar to that attached the Agreement as Exhibit A). (*Id*. at ¶22 (c)).

### G.    Issuance of Notice and Class Member Reaction

4    
5        The procedures for giving notice to the Class/Collective Members, as set forth in the Settlement

6    Agreement and ordered in the Preliminary Approval Order [ECF No. 94], have been properly

7    followed. (Exh. B, Stoops Decl. at ¶ 62). On August 5, 2024, the Settlement Administrator issued

8    notice to each of the 3,981 Class Members. (Exh. C, Bridley Decl. at ¶ 5).

9        The notice, class member information sheets, and opt out request forms contained detailed

10   information about the lawsuit, including the total amount of the settlement, the method by which the

11   settlement funds would be allocated among the Class Members, and procedures for opting out from

12   the Settlement and objecting to the Settlement. The Notice also provided contact information for Class

13   Counsel and the Settlement Administrator.

14       The Settlement Administrator followed accepted best practices to ensure that the notice

15   reached as many Class Members as feasible. (*Id.* at ¶¶ 5-8).   The Settlement Administrator

16   disseminated the Court-approved notice to all Class Members by first class mail for whom a mailing

17   address was available (3,725), using the National Change of Address ("NCOA") database to verify

18   the accuracy of all addresses prior to sending the Notices. (*Id.*).   The Settlement Administrator also

19   ran traces on the addresses of any returned Notices to again search for an updated address. (*Id.*). The

20   remaining 285 Class Members were issued notice by e-mail. (*Id.*).

21       The reaction to the Settlement was overwhelmingly positive. As of the September 19, 2024

22   conclusion of the objection and opt out period, zero Class Members had submitted objections or opt

23   out request forms. (*Id.* at ¶ 10).

### IV.    ARGUMENT IN SUPPORT OF FINAL APPROVAL

24   
25       A.    The Best Practicable Notice of Settlement Has Been Provided to the Class/Collective.

26       The mailing of the Notice and corresponding forms to the Class Members, and the general

27   administration of the notice process as described above, meets the requirements for the "best

28

practicable" notice in this case as necessary to protect the due process rights of Class Members. *See e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Agreement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt out, objection, and approval process.

**B.    Final Approval Standards Under Rule 23 and the FLSA.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [. . .] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests

- 14 -

1    of the class are better served by the settlement than by further litigation." *Manual for Complex*

2    *Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

3          When determining whether to grant final approval, "the court's intrusion upon what is

4    otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited

5    to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

6    overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a

7    whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The

8    court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration

9    of further litigation; the risk of maintaining class action status throughout the trial; the amount offered

10   in settlement; the extent of discovery completed, and the state of the proceedings; the experience and

11   views of counsel [. . .] and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955

12   F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993). "The

13   recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v.*

14   *Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D.

15   15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the

16   settlement after hard-fought negotiations is entitled to considerable weight.").

17   **C.    The Settlement Agreement is Presumptively Fair Because No Class Collective**
           **Members Have Objected to the Settlement, the Significant Discovery Conducted,**
18         **Class Counsel's Experience, and Arms-Length Negotiation.**

19         The Court should begin its analysis with a presumption that the Agreement is fair and should

20   be approved, due to (1) the existence of zero Class Member objections to the Settlement (bolstered

21   further by zero opt out requests), (2) the meaningful discovery conducted, (3) Class Counsel's

22   significant experience in this kind of litigation, and (4) the arms-length negotiations before an

23   experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-

24   length negotiations conducted by competent counsel after appropriate discovery are *prima-facie*

25   evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall*

26   *Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class

27

28

settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

*First*, zero objections were made to the Agreement and the objection period closed September 19, 2022. (Exh. C, Bridley Decl. at ¶ 10). Likewise, zero Class Members submitted opt out request forms. (*Id.*).

*Second*, as discussed above, the Parties engaged in substantial discovery and a significant exchange of relevant information and data in advance of the Parties' mediation. *Supra* at pp. 4-7. As a result of these efforts, Class Counsel had sufficient information to evaluate the strengths and weaknesses of the Class/Collective claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value for the claims at issue.

*Third*, Class Counsel are highly experienced in wage and hour class action litigation. (Exh. B, Stoops Decl. at ¶¶ 3-7).

*Finally*, the Settlement was reached only after participating in arms-length, good-faith negotiations under the supervision of esteemed wage and hour mediator, Michael Dickstein. The case has been zealously litigated by both sides. There are no indicia of collusion.

For all these reasons, a presumption is appropriate that the class relief in the Agreement is fair.

## 1. Zero Objections and Zero Opt Outs

As of the date the objection period closed, September 19, 2024, zero objections were made despite the notice going to 3.983 Class Members. Even in cases where objections are made it is recognized that a small number of objections indicates a favorable class reaction. *See Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).

Moreover, zero Class Members opted out of the Settlement. This overwhelmingly positive reaction of the Class strongly supports final approval of the Agreement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (granting final approval where 16 of 329

class members opted out, explaining that where exclusions and opt-outs are low, there is a presumption of a favorable class reaction).

### 2. The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues

Class Counsel have engaged in extensive investigation of the claims in this case and the Parties engaged in significant discovery. Prior to the mediation process, both parties researched their claims and defenses in order to appropriately evaluate the strengths and weaknesses of their respective cases and did so in view of the comprehensive class-wide (albeit informal) discovery addressed above. (Exh. B, Stoops Decl. at ¶¶ 39-42, 46-55). Prior to and during the mediation, Defendant also voluntarily provided class data and information which permitted an objective assessment of Defendant's potential liability exposure. Further, Class Counsel, along with Desmond, Marcello & Amster, P.C., analyzed detailed, individualized class/collective member payroll and time record data to prepare a comprehensive damage analysis. (*Id.*).

Ultimately, both parties carefully weighed the risks and benefits of resolving the case in comparison to proceeding with the motion for class certification and summary judgment, and, potentially, before the Ninth Circuit. The parties concluded that the settlement terms were acceptable and the benefits of settling outweighed the risks of further litigation.

In summary, the Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (8th Cir. 2000) (emphasizing that the touch stone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery).

### 3. The Recommendations of Experienced Counsel Favor Approval of the Settlement Agreement

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re*

- 17 -

*Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Class Counsel has practiced law for many years, has focused its practice on wage and hour class actions, and has been appointed class counsel or co-class counsel in scores of class actions, obtaining substantial recoveries for hundreds of thousands of employees. Similarly, Defendant is represented by Spencer Fane LLP, a well-known employment defense firm, and defense counsel are well-versed in litigating wage and hour class actions. The parties and counsel believe the Settlement is fair and appropriate given all factors involved.

The fact that qualified and well-informed counsel endorse the Agreement as being fair, reasonable, and adequate heavily favors this Court's approval of the Agreement.

### 4. The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* § 30.42 (1995)).

The parties engaged in a day-long mediation with esteemed wage and hour mediator Michael Dickstein. Before the mediation, the Parties submitted extensive mediation briefing, including detailed data analyses and assessments, and substantial evidence. Following the mediation, the Parties negotiated the long-form Settlement Agreement over a period of several weeks.

### D. The Settlement Agreement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation.

### 1. The Value of the Settlement Favors Final Approval

The value of the Settlement – $1,100,000 – is an excellent result, and the Settlement compares favorably to other similar class/collective action wage and hour settlements. This is especially true in

- 18 -

light of the defenses raised by Defendant including defenses relating to: compensability of the alleged off-the-clock time; amount of off-the-clock time worked; whether the alleged work time was *de minimis*; the fact that a large portion of the Class Members were subject to arbitration agreements; and the propriety of class and collective certification. (Exh. B, Stoops Decl. at ¶ 47). Plaintiffs faced the very real possibility that if they proceeded to trial, they might obtain little if any recovery for the Class.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [. . .] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Based upon the evidence obtained and the figures above, Defendant's realistic maximum damage exposure in this case fell in a range of $1,409,303 to $1,891,147. (Exh. B, Stoops Decl. at ¶ 54). Accordingly, the $1,100,000 Gross Settlement Amount provides the Class Members 58.17% to 78.05% of their maximum damages. (*Id.* at ¶ 55).

Courts in the Ninth Circuit have observed that: "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). The Settlement here is significantly more than a "fraction" and provides a recovery commensurate with the associated risk factors involved in the case.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Case No. 23-cv-00677-EMC

Finally, the average estimated payment to the Class Members is $162.35 and the highest estimated payment is $1,737.41. (Exh. C, Bridley Decl. at ¶ 11).

Certainly, there can be no question that the Settlement is substantial and provides a significant benefit to the Class Members.

### 2. Further Litigation Would Involve Risk, Expense, Delay and Burdon on Class/Collective Members

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, litigation entails expense.").

Similarly, here, Defendant continues to contest liability and the propriety of collective and class certification. Defendant's absolute denial of liability, paired with its diligent efforts to prevent collective and class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Agreement.

Moreover, this Rule 23 Class and FLSA Collective involves intricate legal and factual questions under federal and state law. Litigating these complex claims would require substantial additional discovery and further pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. Once liability had been established on a class-wide basis, Class/Collective Members might be required to testify at individual damages mini-trials. As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class/Collective Members, if any, would likely occur only after several years of delay. In contrast, the Agreement will yield a prompt, certain, and substantial recovery for the Class/Collective Members. Such a result benefits the Parties and the court

system.

**E.    The Court Should Grant Final Certification and Collective Action Designation.**

The Court previously certified the Class and Collective for settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective action. [ECF No. 94]. The Court ruled that, for purposes of the settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*). The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. (*Id.*). For these reasons, and the reasons set forth in the Motion for Preliminary Approval, Plaintiffs respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

**F.    The Settlement Administration Fees Should Be Approved**

The Settlement Agreement provides for an allocation of funds to cover the costs of third-party settlement administration. Currently, it is estimated that the settlement administration cost for this case will not exceed $36,744. (Exh. B, Stoops Decl. at ¶ 61). The settlement administration duties, as outlined in the Settlement Agreement, have been handled by Atticus Administration, LLC. (*Id.* at ¶ 60). Atticus Administration, LLC, is well-respected and has been utilized successfully by Class Counsel in numerous settlements of similar nature to the instant litigation. (*Id.*). Completion of settlement administration for a total fee of $36,744 is reasonable given the number of individuals involved in the Settlement. Therefore, Plaintiffs request approval of Atticus Administration, LLC as the administrator and of the allocation of $36,744 for administration expenses.

**V.    CONCLUSION**

For the foregoing reasons Plaintiffs, without opposition from Defendant, respectfully requests that the Court enter an order (1) certifying a class for settlement purposes under Rule 23 and certifying a FLSA collective for settlement purposes under 29 U.S.C. § 201, *et seq.* (as defined in the Parties' Settlement Agreement); (2) finally approving the Parties' Settlement Agreement; (3) appointing Plaintiffs Adrianna Jarrett and Mary Ngethe as Class Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; and (4) awarding fees to the third-party Settlement Administrator Atticus Administration, LLC.

SOMMERS SCHWARTZ, P.C.

DATED:  October 9, 2024                By: /s/ Kevin J. Stoops
                                            Kevin J. Stoops (SBN 332200)
                                            SOMMERS SCHWARTZ, P.C.
                                            One Towne Square, Suite 1700
                                            Southfield, Michigan 48076
                                            Telephone: (248) 355-0300
                                            kstoops@sommerspc.com

                                            *Attorneys for Plaintiff and Proposed Collective and Class Members*

## CERTIFICATE OF SERVICE

   I certify that on October 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                    /s/Kevin J Stoops
                    Kevin J. Stoops

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL                    Case No. 23-cv-00677-EMC